A11A0684. CHARLOT v. GOLDWIRE.

(713 SE2d 667)

BARNES, Presiding Judge.

This case arose after Larousse Charlot, the biological father of B. C., pro se, filed a petition for legitimation and custody or visitation against Meesha Goldwire, the child's mother. Goldwire answered and counterclaimed for custody, support, and attorney fees. Charlot filed a motion for genetic testing, which Goldwire did not contest, instead agreeing to the DNA testing "to determine [B. C.'s] paternity in lieu of holding a hearing [on paternity]." Both parties appeared at a hearing on the motion, after which, the trial court granted the motion and ordered them to provide DNA samples.

At various points during the proceedings, Charlot was represented by counsel; however, it is unclear from the record when counsel was representing Charlot, and when Charlot was proceeding pro se. A hearing on the petition and counterclaim was apparently held on July 27, 2010, the transcript of which is not included in the record. The trial court granted the petition and awarded Charlot joint physical and legal custody of the child. The mother was designated as B. C.'s primary custodian. The order also provided that Charlot pay the mother $551 per month in child support based on his monthly salary of $3,108 and the mother's monthly salary of $2,366. Goldwire was awarded attorney fees of $2,500.

It is difficult to ascertain what Charlot contends as error, and virtually impossible to discern his arguments save vaguely asserted claims that he was denied "equal time" to the child, his child support was miscalculated, and that attorney fees were impermissibly awarded. We will address his contentions to the best of our abilities.

1. When issues of custody and visitation are raised as a part of a petition for legitimation, the court's determinations are "based on the best interests of the child standard." OCGA § 19-7-22 (f.1). Although Charlot appears to argue that the trial court denied him equal access to the child, at the time of the hearing, B. C. was approximately one year old. The order provided that Charlot would have limited visitation which would increase as the child got older,

culminating when the child is four years old to Charlot having 130 parenting days a year and the mother 235 days. There are no transcripts of any hearings and, in the absence of transcripts that would detail what was presented in the hearings, this Court assumes that the evidence adduced therein was sufficient to support the trial court's findings that the custody and visitation decision was in the best interest of the child. See *Fine v. Fine*, 281 Ga. 850, 852 (2) (642 SE2d 698) (2007).

2. By statute, Georgia law provides that

> [i]t is the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child until the child reaches the age of 18 or becomes emancipated, except to the extent that the duty of one parent is otherwise or further defined by court order.

OCGA § 19-7-24. In determining the child support due from the noncustodial parent to the custodial parent, "[t]he guidelines for computing the amount of child support are found in OCGA § 19-6-15 and must be considered by any court setting child support." *Roberts v. Tharp*, 286 Ga. 579, 580 (1) (690 SE2d 404) (2010). These guidelines "shall apply as a rebuttable presumption *in all legal proceedings involving the child support responsibility of a parent.*" (Emphasis supplied.) OCGA § 19-6-15 (c) (1). Although this presumptive amount of child support is rebuttable, *"deviations subtracted from or increased to the presumptive amount of child support* [must be] . . . supported by the required findings of fact and application of the best interest of the child standard . . . [and] shall be entered on the Child Support Schedule E — Deviations." OCGA § 19-6-15 (b) (8). Additionally, OCGA § 19-6-15 (d) provides:

> In the event of a hearing or trial on the issue of child support, the guidelines enumerated in [OCGA § 19-6-15] are intended by the General Assembly to be guidelines only and any court so applying these guidelines shall not abrogate its responsibility in making the final determination of child support *based on the evidence presented to it at the time of the hearing or trial.*

(Emphasis supplied.) See *Spurlock v. Dept. of Human Resources*, 286 Ga. 512, 516 (3) (690 SE2d 378) (2010).

The record contains the parties' financial affidavits, and the trial court's child support worksheet, along with Schedule D attached to the worksheet, which show that the father's basic child support

obligation was calculated to be $537.71 based on his pro rata share of the parents' combined income. That amount was adjusted to add a pro rata share of the mother's health insurance expenses of $40 per month, which increased the child support amount by $22.71. There was no Schedule E in the record reflecting any deviations, and because the hearing transcript was not included in the record, to the extent Charlot argues that the trial court should have considered facts presented during the hearing in calculating his child support payment, this Court assumes that the evidence adduced therein was sufficient to support the trial court's findings. *Blue v. Blue*, 279 Ga. 550 (1) (615 SE2d 540) (2005); see OCGA § 19-6-15 (d).

3. Charlot also appears to maintain that the trial court erred in awarding the mother attorney fees. In her counterclaim, the mother requested attorney fees but did not indicate under what statute she was seeking them. The evidence in the record shows that the mother's trial counsel submitted an itemized bill showing approximately $5,800 in legal fees. The trial court awarded the mother less than half of that sum — $2,500.

A court may order attorney fees in cases involving paternity under OCGA § 19-7-50. The statute provides, "The court may order reasonable fees of counsel, experts, and the child's guardian ad litem and other costs of the action and pretrial proceedings, including blood and other tests, to be paid by the parties in proportions and at times determined by the court." "Generally an award of attorney fees is not available unless supported by statute or contract." *Padilla v. Padilla*, 282 Ga. 273, 274 (1) (646 SE2d 672) (2007).

Here, there is no transcript of the proceedings below, and the trial court failed to identify in its order assessing attorney fees the basis on which the fees were granted. Where the record does not contain the basis for the award in either the order awarding attorney fees, or a transcript of the attorney fees hearing, we are unable to properly review the claim, and the attorney fees award cannot be sustained. *Sinkwich v. Conner*, 288 Ga. App. 320 (654 SE2d 182) (2007); see *Cotting v. Cotting*, 261 Ga. App. 370, 372 (2) (582 SE2d 527) (2003) (appellate court "in the dark" regarding trial court's intent and basis for ruling on attorney fees, the attorney fees award could not be properly reviewed and the case was remanded for clarification of the court's award).

Because the order in this case fails to specify any basis for the attorney fees award, the award is vacated, and the case is remanded for the trial court to specify such basis for attorney fees. See *Webb v. Watkins*, 283 Ga. App. 385, 386 (2) (641 SE2d 611) (2007).

*Judgment affirmed in part and vacated in part, and case remanded. Adams, J., concurs. Blackwell, J., concurs in Divisions 1 and 2, and concurs in judgment only in Division 3.*

DECIDED JULY 1, 2011.

Larousse Charlot, *pro se.*
Meesha Goldwire, *pro se.*