**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 3, 2012**

# In the Court of Appeals of Georgia

A12A0040. JACKSON v. IRVIN.                                      AD-002

ADAMS, Judge.

Nichelle M. Jackson, pursuant to our grant of her discretionary application, appeals the trial court's order providing for the legitimation, custody, and support of her minor child by the father, Corvey Irvin. Jackson claims that the trial court erred (i) in deviating from the presumptive amount of child support to account for Irvin's other child, (ii) in relying on facts not in evidence, (iii) in using the wrong standard in determining child support, (iv) in failing to require that Irvin maintain health insurance for the child, and (v) in awarding inadequate attorney fees. In light of the evidence, which showed little more than the existence of the other child, we agree with Jackson that the trial court erred in applying a nonspecific deviation from the presumptive amount of child support to account for Irvin's support obligations to the

subsequent child. We find no merit in Jackson's other claims of error and so affirm the remainder of the judgment.

Jackson and Irvin are the parents of a four-year-old child. Irvin was attending college when the child was born, and he did not make any child support payments until he signed a contract to play NFL football in 2009. Jackson filed a petition for determination of paternity in October of 2009, and Irvin filed a counterclaim for legitimation of the child.

Jackson and Irvin agreed to temporary child support payments of $3,500, and they appeared for the final hearing on the case in April of 2011, at which the only issue in dispute was child support. The evidence showed that Irvin had signed a contract to play NFL football in 2011 for $405,000, although, as of the hearing, a lockout was ongoing and, according to Irvin, the "old collective bargaining agreement is gone." At the time of the hearing, Jackson was attending a vocational school with the intent of becoming a medical assistant.

Irvin testified that several months before the hearing he became the father of a child by a woman other than Jackson. According to Irvin, he was not under a court order to provide support for that child. He also testified to the name of the child, the child's date of birth, and the name of the mother. There was no evidence that the other

child was living with Irvin or of the financial or employment status of the mother of the other child.

1. Jackson claims that the trial court erred in establishing support for her child by deviating from the presumptive amount of child support on account of a subsequent child who was not being supported by Irvin, was not living with Irvin, and for whom no pre-existing order was in place. Under the circumstances of this case, we agree.

"The guidelines for computing the amount of child support are found in OCGA § 19-6-15 and must be considered by any court setting child support." *Stowell v. Huguenard*, 288 Ga. 628 (706 SE2d 419) (2011) (citation and punctuation omitted). "The child support guidelines . . . shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent." OCGA § 19-6-15 (c) (1). The presumptive amount of child support is rebuttable, but "deviations subtracted from or increased to the presumptive amount of child support are applied . . . if supported by the required findings of fact and application of the best interest of the child standard . . . [and] shall be entered on the Child Support Schedule E - Deviations." OCGA § 19-6-15 (b) (8).

Where a deviation is determined to apply and the factfinder deviates from the presumptive amount of child support, the order must explain the reasons for the deviation, provide the amount of child support that would have been required if no deviation had been applied, and state how application of the presumptive amount of child support would be unjust or inappropriate and how the best interest of the children for whom support is being determined will be served by the deviation. OCGA §§ 19-6-15 (c) (2) (E) and (i) (1) (B). In addition, the order must include a finding that states how the court's or jury's application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support. OCGA § 19-6-15 (c) (2) (E) (iii).

*Turner v. Turner*, 285 Ga. 866, 867 (1) (684 SE2d 596) (2009). We "review any findings based on disputed facts or witness credibility under the clearly erroneous standard and . . . the decision to deviate, or not to deviate, from the presumptive amount of child support under the abuse of discretion standard." *Hamlin v. Ramey*, 291 Ga. App. 222, 225 (1) (661 SE2d 593) (2008) (footnotes omitted).

Here, the trial court calculated the presumptive amount of monthly child support payable by Irvin as $2,756.94. The trial court then applied a non-specific deviation by subtracting $907 from Irvin's support obligation to arrive at a final child support amount of $1,850. The trial court explained in "Child Support Schedule E"

4

that the presumptive amount would be unjust or inappropriate because, among other things, "the presumptive amount fails to take into account the fact that father has a subsequent child that he is legally obligated to support" and that "[t]he court is making a non-specific deviation for those support obligations." The trial court further found that the deviation would serve the best interest of the child for whom support was being determined because "the deviation would allow the father to pay all of his obligations and continue to have sufficient funds to visit with the child and would allow the child ample support to care for his basic needs."

Unlike prior law, the current version of OCGA § 19-6-15 does not contemplate a specific variance of a child support award based on a party's support obligations to another household.[1] OCGA § 19-6-15 (i) (3) does allow for nonspecific "[d]eviations from the presumptive amount of child support . . . in addition to those established under this subsection when the court or the jury finds it is in the best interest of the

---

[1] Compare OCGA § 19-6-15 (c) (6) (2004): "The trier of fact shall vary the final award of child support, up or down, . . .upon a written finding that the presence of one or more of the following special circumstances makes the presumptive amount of support either excessive or inadequate: . . . (6) A party's other support obligations to another household." The current law contemplates adjustments to a parent's monthly gross income based on preexisting support orders with respect to other children, OCGA § 19-6-15 (b) (2) (B), as well as a "[t]heoretical child support order for qualified children, if allowed by the court," OCGA § 19-6-15 (b) (2) (C), neither of which applies here.

5

child." Nevertheless, there is no evidence to support the trial court's conclusion that a reduction in Irvin's presumptive child support obligation was in the child's best interest in that the deviation would "allow the father to pay all of his obligations" and to have sufficient funds to visit with the child. The record fails to show that Irvin was paying any support for the subsequent child, and the extent of the obligation Irvin might ultimately incur thereby–and Irvin's ability to "pay all of his obligations," as expressed by the trial court–was a matter of speculation. Further, the evidence relevant to the subsequent child showed little more than his mere existence and did not shed light on the pertinent issues of whether the presumptive amount of child support was unjust or inappropriate, OCGA § 19-6-15 (i) (1) (B) (iii) (I), and whether a deviation therefrom was in "[t]he best interest of the child *for whom support is being determined*." OCGA § 19-6-15 (i) (1) (B) (iii) (II) (emphasis supplied).[2] Accordingly, we conclude that the trial court abused its discretion in relying on

_____

[2] Although not strictly controlling here, we also find persuasive authority decided under prior versions of OCGA § 9-6-15. See, e. g., *Betty v. Betty*, 274 Ga. 194, 195 (1) (552 SE2d 846) (2001) (fact of additional child for whom father was the legal custodian, but who lived with child's mother and for whom the father paid no support, shed no light on essential question of whether a support obligation to that child rendered the presumptive amount of support excessive); *Hoodenpyl v. Reason*, 268 Ga. 10, 11 (2) (485 SE2d 750) (1997) ("[t]he mere fact of additional children . . . will not justify a reduction in the guideline range").

Irvin's support obligations to his subsequent child to deviate from the presumptive amount of child support in this case.

Irvin points out that the trial court did not rely solely on Irvin's other child in applying the child support guidelines. In explaining why the presumptive amount of child support was unjust or inappropriate, the trial court noted in Schedule E that the presumptive amount did not take into account the agent commissions and fees associated with Irvin's income and, further, that the "father is presently unemployed but is likely to be employed again in the near future." Nevertheless, given the trial court's ruling, we can only conclude that some portion of the deviation was attributable to Irvin's support obligations to the subsequent child. Accordingly, we reverse the final judgment in part and remand for proceedings consistent with this opinion.[3]

_____

[3] In challenging the trial court's child support ruling, Jackson also argues that the trial court erred in failing to allow for a high income deviation. See OCGA § 19-6-15 (i) (2) (A). "[P]arents are considered to be high-income parents if their combined adjusted income exceeds $30,000.00 per month." Id. In such case, the "court . . . may consider upward deviation to attain an appropriate award of child support for high-income parents which is consistent with the best interest of the child." Id. Here, the combined adjusted income of the parents exceeded $30,000 per month by $1,261.50, which amount was duly entered on the child support worksheet. The worksheet provides that this amount is automatically displayed "for the court/jury to consider," but there is no "automatic" deviation based on high income, as Jackson infers. Thus, it appears that the trial court considered the appropriate information but exercised its

2. (a) We find no merit in Jackson's other claims of error. First, she argues that the trial court considered facts not in evidence by "outlining the woes of being an NFL football player." While we agree that some of the trial court's findings cannot be precisely supported by the record, the evidence supports the trial court's material conclusions as to the limited nature of Irvin's NFL career and the ongoing work stoppage. For instance, Irvin testified that his job was "fragile," and that "right now there's no football." More importantly, Jackson fails to show how she was harmed. We find no reversible error. See generally *Dupree v. Dupree*, 287 Ga. 319, 323 (6) (695 SE2d 628) (2010) (a party must show both error and harm to prevail).

(b) Second, Jackson contends that the trial court erred by limiting its decision to award support based solely on Irvin's income, thereby using the wrong standard. She then argues that the trial court should have considered Irvin's allegedly extravagant spending habits and the disparity in income between the parents. But the trial court's order shows that it considered and applied the appropriate Georgia child support guidelines and did not, in fact, determine support based solely on Irvin's

discretion not to provide for a high income deviation. Jackson's argument shows no error.

8

income. See OCGA § 19-6-15. Jackson does not show that the trial court used the "wrong standard" in reaching its decision, and we find no error on that account.

(c) Third, Jackson contends that the trial court erred in failing to require Irvin to pay for health insurance if not employed by the NFL. She goes on to argue that Irvin should be required to maintain health insurance for the child wherever he is employed.[4] Jackson fails to support her argument by citation to authority, nor presents any ground for this court to conclude that the trial court abused its discretion in determining the scope of Irvin's obligation to provide insurance. See generally OCGA § 19-7-24 (both parents are responsible for maintenance, protection, and education of children born out of wedlock); *Galvin v. Galvin*, 288 Ga. 125, 128 (4) (702 SE2d 155) (2010) (assignment of parental responsibility for children's health insurance coverage is within the discretion of the trial court).

---

[4] The trial court, after noting that health insurance would be available to Irvin through his employer if he returns to work as an NFL athlete, ordered that Irvin maintain health insurance for the child "as long as the same is available through his employer," but that he was not required to maintain coverage through COBRA or a similar plan in the event Irvin was no longer employed. The parenting plan, which is incorporated into the judgment, also provides that "[h]ealth insurance for the children is available at a reasonable cost to Defendant through his employer. As long as health insurance remains available to such parent at a reasonable cost, such parent shall maintain such insurance on all the children."

(d) Lastly, Jackson contends that the trial court erred in failing to award her adequate attorney fees. At the final hearing, Jackson's attorneys asked for an award of approximately $20,000 in attorney fees. The trial court, recognizing that it had previously awarded Jackson $5,000 in fees during the pendency of the action, and "[g]iven the testimony elicited at trial, the Court's own evaluation of the complexities of the case and all other factors in the case," awarded an additional $5,000 in fees under authority of OCGA § 19-7-50. This statute, which allows for fees in cases involving paternity, provides that "[t]he court may order reasonable fees of counsel, experts, and the child's guardian ad litem and other costs of the action and pretrial proceedings, including blood and other tests, to be paid by the parties in proportions and at times determined by the court." Id. See *Charlot v. Goldwire*, 310 Ga. App. 463, 465 (3) (713 SE2d 667) (2011).

Jackson did not raise this claim of error in her application for discretionary appeal, and we cannot consider it. See *Rogers v. Barnett*, 237 Ga. App. 301, 303 (6) (514 SE2d 443) (1999); *Williams v. Aetna Casualty & Surety Co.*, 182 Ga. App. 684, 686 (3) (356 SE2d 690) (1987); *Parham v. Lanier Collection Agency & Svc.*, 178 Ga. App. 84, 86 (2) (341 SE2d 889) (1986). Moreover, assuming that Jackson's claim of error was otherwise reviewable, in light of the trial court's findings and the extremely

10

broad authority vested in it by OCGA § 19-7-50, we can discern no basis for concluding that the trial court abused its discretion by, as Jackson asserts, failing to award "adequate" attorney fees.

*Judgment affirmed in part and reversed in part and case remanded with direction. Barnes, P. J., and McFadden, J., concur.*