**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**April 13, 2015**

# In the Court of Appeals of Georgia

A14A1514, A14A1515. BANKSTON v. WARBINGTON; and vice versa.

BRANCH, Judge.

These companion appeals are the second and third arising from a custody dispute that went to trial in September 2012. In October 2012, the trial court issued an order modifying primary physical custody of the ten-year-old child at issue in favor of the father as of January 2013, but also including a self-executing provision that the mother would regain custody after 18 months (in the summer of 2014). In November 2013, the trial court ruled on the mother's post-trial motions and the father's request for attorney fees. On appeal in Case No. A14A1514, the mother argues that the trial court abused its discretion when it modified custody in favor of the father. On cross-appeal in Case No. A14A1515, the father argues that the trial

court erred when it ordered the self-executing change of custody in the summer of 2014, when it increased his child support obligation as of that time, and when it failed to rule on the father's request for fees first made shortly after trial. We affirm the initial modification of custody as supported by the evidence, but we reverse those portions of the order implementing the self-executing return of custody and awarding child support to the mother. We also vacate the judgment as to fees and remand for further proceedings consistent with this opinion.

On appeal from a trial court's determination in a custody dispute, we defer to that court in all matters of fact:

> When considering a dispute regarding the custody of a child, a trial court has very broad discretion, looking always to the best interest of the child. This Court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion.

*Williams v. Williams*, 295 Ga. 113 (1) (757 SE2d 859) (2014) (citations and punctuation omitted). "We are mindful that the Solomonic task of making [custody] decisions lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their

credibility." *Smith v. Curtis*, 316 Ga. App. 890, 892 (730 SE2d 604) (2012) (citations and punctuation omitted).

Viewed in favor of the trial court's judgment, the record shows that the child at issue, a girl, was born on January 26, 2004. In a November 2004 consent order, the parties agreed that the mother would have primary physical custody of the child. In February 2006, after the mother moved out of Georgia, the father sought and obtained more visitation time. On February 9, 2011, the father filed the instant petition for a change in custody and child support, alleging inter alia that the mother had not provided a stable environment for the child and had alienated the child from the father.

In July 2011, the mother refused to pick up the daughter at Los Angeles International Airport (LAX) at a scheduled custody transfer such that the daughter was forced to return to Atlanta with her father before flying back to her mother in California.[1] On July 26, 2011, the mother filed an emergency motion for contempt against the father as to the airport incident, which the trial court characterized as a "honest disagreement" between the two parents. In April 2012, the trial court found

_____

[1] When the daughter told the mother over the phone from the airport that she "thought [the mother] wanted to see [her]," the mother replied that she was not coming.

3

that the mother and her counsel had thus "unnecessarily expanded the proceeding by improper conduct," including the filing and defense of pleadings and motions "that lacked substantial justification or [were] interposed for delay or harassment," and awarded the father $4,300.00 in attorney fees and expenses. In the case's first appearance on appeal, we affirmed the trial court's authority to award the father attorney fees, reversed the award of the father's air expenses as not authorized by OCGA § 9-15-14 (b), and remanded for further proceedings as to the proper amount of the fee award. *Bankston v. Warbington*, 319 Ga. App. 821, 822-823 (2) (738 SE2d 656) (2013).

At the September 2012 trial on the father's petition to change custody, the trial court heard testimony from witnesses, including the child's guardian ad litem, that the mother had moved four or more times after leaving Georgia, each requiring a change in schooling arrangements and one occurring during the daughter's summer visitation with her father, and that the mother had failed to give the father sufficient notice of these relocations. Evidence at the hearing described the July 2011 mishap at LAX and showed that the mother discouraged the daughter from making friends in her neighborhood, deprived the father of meaningful telephone or teleconferencing contact, and disrupted therapy sessions by discouraging the daughter from

4

acknowledging her father and not allowing the daughter to speak for herself. Evidence also showed that the mother's disdain for the father was damaging the daughter's relationship with him. On October 11, 2012, and citing OCGA § 19-9-3 (a) (3) (N),[2] the trial court held that because "the only antidote to the alienating behaviors of the [m]other is to allow the child to be immersed in the [f]ather's [household] for a period of time," it was "in the best interest of the child to award primary physical custody of the child to the [f]ather for a period of 18 months, to commence at the end of her scheduled winter vacation time with the [m]other in 2012," until one week before the start of the child's 2014-2015 school year, when the mother would regain primary physical custody. The trial court also awarded child support from the mother to the father in the amount of $1,170 per month for the period of his primary custodianship and from the father to the mother in the amount of $890 per month "commenc[ing] September 1, 2014," by which time custody would have returned to the mother. The court reserved the issue of fees.

---

[2] OCGA § 19-9-3 (a) (3) provides that a trial court considering the best interests of a child in a custody matter "may consider any relevant factor including, but not limited to . . . (N) [t]he willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child[.]"

5

In the weeks following the entry of this October 2012 judgment, the mother filed at least six different motions, none of which she designated for inclusion in the appellate record: a motion for new trial; motions for reconsideration of three of the trial court's orders, including its final judgment, on the basis in part of "newly discovered evidence" as to the father's drinking alcohol "at various local bars and restaurants"; a motion to provide the child with "a Healthy Allergy Free Environment"; a motion for entry of an order regarding reimbursement of medical expenses; and a motion to correct a child support worksheet. After a hearing, the trial court denied the motion for new trial, noting as it did so that the mother had withdrawn her motion for reconsideration based on newly discovered evidence.

On January 24, 2013, the mother, who had retained new counsel Lisa West, moved to recuse the judge presiding over the case on the ground that the judge had previously recused herself from cases in which West was involved. On February 7, 2013, the judge granted the mother's motion to recuse, but noted the court's "grave[] concern[ ] at the prospect of creating a situation in which any litigant before it who has been disappointed with an interim decision can try their luck with another [j]udge simply by retaining Ms. West." On October 4, 2013, the mother again moved for

6

contempt against the father on grounds including that the father had refused to allow the mother to have lunch alone with the child.

A hearing on all pending post-trial matters was held on October 14, 2013. On November 1, the trial court found that a number of the mother's filings, including the October 2013 contempt motion, had been "frivolous and vexatious" and awarded the father $9,362.50 in attorney fees. After the docketing of this appeal and its cross-appeal in this Court, the father moved this Court for emergency supersedeas on the grounds that the trial court erred when it issued the self-executing provision returning custody to the mother in the summer of 2014. We granted the father's emergency motion and ordered the parties and the trial court not to observe the self-executing change-of-custody provision pending our final disposition of these appeals.

Case No. A14A1514

1. On the first appeal, the mother argues that the trial court abused its discretion when it modified custody in favor of the father as of January 2013. We disagree.

"A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child." *Lynch v.*

7

*Horton*, 302 Ga. App. 597, 600 (4) (692 SE2d 34) (2010) (punctuation and citation omitted); see also OCGA § 19-9-3 (b) (trial court may modify custody "based upon a showing of a change in any material conditions or circumstances of a party or the child"); *Weickert v. Weickert*, 268 Ga. App. 624, 627 (1) (602 SE2d 337) (2004) (trial court is not required to find a material change for the worse in order to modify custody). A determination that there has been a material change in condition supporting a modification of custody will be affirmed absent an abuse of discretion, and "[w]here there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion." *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013) (affirming trial court's denial of motion to modify visitation rights as supported by some evidence).

The mother argues that the trial court's finding regarding the best interests of the child under OCGA § 19-9-3 (a) (3) (N) as to the mother's unwillingness "to facilitate and encourage a close and continuing parent-child relationship" between the child and the father resulted in an erroneous disregard of other factors also included in OCGA § 19-9-3 (a) (3). This contention misreads the statute.

OCGA § 19-9-3 (a) (2) provides that a judge considering a custody issue "*may take into consideration all the circumstances of the case . . . in determining to whom

8

custody of the child should be awarded," and that "[t]he duty of the judge . . . *shall* be *to exercise discretion to look to and determine solely what is for the best interest of the child* and what will best promote the child's welfare and happiness and to make his or her award accordingly." (Emphasis supplied.) Consistent with this direction that the trial court's consideration of relevant evidence be discretionary, OCGA § 19-9-3 (a) (3) specifies that "[i]n determining the best interests of the child, the judge *may* consider *any relevant factor including, but not limited to*" a list of seventeen factors, including subsection (a) (3) (N) — "[t]he willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." (Emphasis supplied.) On its face, then, OCGA § 19-9-3 (a) authorizes a trial court to do what this court did — that is, to engage in a discretionary weighing of evidence as to any relevant factor listed in subsection (3) before reaching a final determination as to custody.

It is equally plain that the evidence at the hearing supported the trial court's determination that custody was properly modified, at least as of January 2013, in favor of the father. In *Viskup v. Viskup*, 291 Ga. 103 (727 SE2d 97) (2012), the Supreme Court of Georgia affirmed a trial court's transfer of primary physical

9

custody from a father to a mother when the mother's circumstances had improved since the parties' divorce and the father had been held in contempt for violation of a visitation order and had taken steps to undermine the mother, including sending misleading letters to federal and state officials. Id. at 105 (2). The Court held that "[s]ince there is evidence to support the trial court's award of custody of the child to one fit parent over the other fit parent, we cannot say the trial court abused its discretion" in ordering the change in custody. Id. (citation omitted).

Here, likewise, the record before the trial court included evidence and findings that although both parties were capable of providing for the child, the mother had sufficiently undermined the child's relationship with the father to justify a modification of primary physical custody in favor of the father for at least 18 months as "in the best interest of the child." Because this determination was supported by some evidence, we cannot say that the trial court abused its discretion when it made this modification of custody. *Viskup*, 291 Ga. at 105 (2); *Vines*, 292 Ga. at 552 (2); compare *Cousens v. Pittman*, 266 Ga. App. 387 (597 SE2d 486) (2004) (reversing trial court's modification from sole custody of a child in the mother to joint custody with the father when "no factual support was given" for the court's finding that a material change of circumstances had occurred).

Case No. A14A1515

On cross-appeal, the father asserts that the trial court erred when it (1) included the self-executing change of custody to take effect in the summer of 2014 in its October 2012 order, (2) imposed child support payments on the father as of the date of the self-executing change of custody, and (3) failed to address the father's request for attorney fees and for reapportionment of the guardian ad litem's fees.

2. We first address the father's assertion that the trial court erred when it included a self-executing change of custody in favor of the mother effective 18 months after its award of primary physical custody to the father, which took effect in January 2013.

In *Scott v. Scott*, 276 Ga. 372, 377 (578 SE2d 876) (2003), the Supreme Court of Georgia held that a self-executing change of custody designed to take effect on a "triggering event" such as remarriage or relocation violates OCGA § 19-9-3 (a) (2), which requires that a trial court exercise its discretion concerning a change in custody in light of the child's best interests as evaulated at the time of the proposed change. Id. at 375-377 (footnote omitted); see also *Wrightson v. Wrightson*, 266 Ga. 493, 496

11

(3) (467 SE2d 578) (1996).[3] Provisions that do not take account of the best interests of the child at the time of a triggering event "are utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child." *Scott*, 276 Ga. at 375. Thus "self-executing change of custody provisions are not rendered valid merely because the initial award of custody may have been based upon the child's best interests." Id. at 376. Rather, "the factual situation at the time the custody modification is sought" should determine "whether a change of custody is warranted." Id. (citations and footnote omitted).

As the mother herself conceded below, the self-executing change in custody included in the trial court's October 2012 order failed to provide for "a determination whether the custody change is in the best interest of the [child] at the time the change would automatically occur[.]" *Scott*, 276 Ga. at 377. As such, it "violates [this State's] public policy as expressed in OCGA § 19-9-3" that a trial court take into account "the

---

[3] A self-executing change of custody might be justified when, absent any finding that either parent is unfit, a child 14 years or older exercises his or her right under OCGA § 19-9-3 (a) (5) to choose which parent to live with. *Weaver v. Jones*, 260 Ga. 493, 493 (3) (396 SE2d 890) (1990), citing *Pearce v. Pearce*, 244 Ga. 69 (257 SE2d 904) (1979). Neither parent has argued that the child at issue is of sufficient age to activate this exception.

12

factual situation at the time the custody modification is sought," with the court's "paramount concern" always remaining "the best interests and welfare of the minor child." Id. at 375-377. Because the self-executing change-of-custody provision is void, we reverse that portion of the trial court's order returning custody to the mother in June 2014. Id. at 377 (reversing denial of party's motion to strike self-executing change in custody provision from parties' divorce decree); see also *Dellinger v. Dellinger*, 278 Ga. 732, 736 (609 SE2d 331) (2004) (reversing trial court's judgment as to visitation "with direction that the trial court strike [a] self-executing provision" from a divorce decree).

3. The mother did not request either the self-executing change in custody or a child support award from the father, and the trial court's award of child support from the father to the mother as of September 2014 was made in contemplation of the self-executing change in custody. Given our holding in Division 2 that the self-executing change in custody provision is void, we must also reverse the trial court's prospective modification of child support payments from the father to the mother effective September 2014. The trial court's original child support award of $1,170 per month from the mother to the father therefore stands until properly modified. See *Robertson v. Robertson*, 266 Ga. 516, 517 (1) (467 SE2d 556) (1996) (child support

award may be modified only prospectively, pursuant to a modification action under OCGA § 19-6-19).

4. The father also argues that the trial court erred when it failed to address his claim for attorney fees and costs, including those accumulated before and through the trial held in September 2012. We agree.

The record shows that on October 19, 2012, the father submitted a letter brief detailing his claim for fees and guardian ad litem costs incurred before and through the trial held in September 2012. See OCGA § 9-15-14 (e) (fees "may be requested by motion at any time during the course of the action but not later than 45 days after the final disposition of the action"). The first judge assigned to the case recused herself in February 2013 before ruling on this motion. On September 23, 2013, the father again moved for fees and costs under OCGA §§ 19-9-3 and 9-15-14, referring as he did so to the letter brief of October 2012. This motion asked for an award of a "reasonable portion" of the $46,892.62 spent in fees and costs before entry of the court's final judgment of October 2012 as well as those incurred since that judgment. After the post-trial hearing held on October 14, 2013, the trial court awarded the father attorney fees in the amount of $9,362.50, but limited its discussion of the

14

mother's "frivolous and vexatious" pleadings and motions to those taking place on or after October 31, 2012 — that is, some weeks after trial.

OCGA § 19-9-3 (g) provides in relevant part:

Except as provided in Code Section 19-6-2 [concerning alimony and divorce proceedings], and in addition to the attorney's fee provisions contained in Code Section 19-6-15 [concerning child support payment awards], *the judge may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge.* Attorney's fees may be awarded at both the temporary hearing and the final hearing.

(Emphasis supplied.) On its face, this statute authorizes a trial court to award a party to a custody action both "reasonable attorney's fees and expenses of litigation," including a child's guardian ad litem costs, and contemplates that such an award could include fees and costs incurred in the course of "pretrial proceedings." Likewise, OCGA § 9-15-14 (b) authorizes the recovery of

reasonable and necessary *attorney's fees and expenses of litigation* in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the

15

proceeding by other improper conduct . . . . As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

(Emphasis supplied.)

The trial court's order of November 1, 2013, held that a number of the mother's post-trial motions were "frivolous and vexatious," but did not mention or rule on the father's longstanding request for fees and costs incurred up to and including trial. The trial court was authorized to award such fees and costs, which were requested in writing well before the October 2013 post-trial hearing, and erred to the extent that it failed to consider the father's request as to them. We therefore vacate the trial court's order of November 1, 2013, and remand for further proceedings consistent with this opinion, including an evidentiary hearing on the father's request for reasonable fees and costs incurred up to and including trial. See *Unifund CCR Partners v. Mehrlander*, 309 Ga. App. 685, 687-688 (710 SE2d 882) (2011) (vacating an award of fees made under OCGA § 9-15-14 and remanding with direction to "(1) reconsider the award of attorney fees and litigation expenses, (2) provide, if necessary, an explanation of the statutory basis or bases for any award given under OCGA § 9-15-14 (a) and/or (b), as well as any findings of facts and conclusions of

law necessary to support such an award, and (3) enter a new judgment from which the losing party may appeal") (footnote omitted).

*Judgment affirmed in Case No. A14A1514. Judgment reversed in part, vacated in part, and case remanded with direction in Case No. A14A1515. Barnes, P. J., and Boggs, J., concur.*