**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 11, 2016**

# In the Court of Appeals of Georgia

A16A1056. OXFORD v. FULLER.

RICKMAN, Judge.

A mother appeals from a trial court order modifying custody of her minor children from joint legal and physical custody shared with the childrens' father to a custody arrangement whereby primary physical custody and final decision making authority alternate annually and automatically. The mother contends that the trial court erred by entering the custody order because it is self-executing without making a determination as to whether the custody change is in the best interests of the children and there is no evidence that the terms of the order are in the best interests of the children. For the following reasons, we reverse the judgment and remand for further proceedings consistent with this opinion.

On appeal from a trial court's determination in a custody dispute, we defer to that court in all matters of fact: When considering a dispute regarding the custody of a child, a trial court has very broad discretion, looking always to the best interest of the child. This Court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion.

(Citation and punctuation omitted.) *Bankston v. Washington*, 332 Ga. App. 29 (771 SE2d 726) (2015).

So viewed, the record shows that there are three children at issue, twin girls who were born on November 15, 2006 and a boy born on June 15, 2009. In a June 2012 divorce compromise and settlement agreement, the parties agreed that they would share joint legal and physical custody of the children and follow a week-to-week custodial arrangement schedule. There was a provision in that agreement that the mother "agree[d] to live and reside in Upson County, Georgia, or any County which is contiguous to Upson County, until further order of the [trial court]."

In January 2013, the mother moved to Coweta County with her current husband because she was offered more lucrative employment. In February 2014, the mother filed, in Upson County, the instant petition for a change of custody and child support, alleging, inter alia, that her move was a change in circumstances materially affecting

2

the welfare of her children. In response to that petition, the father filed a petition for modification of custody in Coweta County. The father's petition was transferred to Upson County.

At the April 2015 trial on both petitions, the court heard testimony that since the divorce, the mother had attended nursing school, which increased her employment opportunities, and she had remarried. Insurance for the children is provided by the mother and her new husband. The trial court heard testimony that the mother was more financially stable than the father.

Both of the girls testified at the trial that they liked staying with both parents. One of the girls testified that when she was with her father she could not speak with her mother as much as would like, and that her father would not let her go home with her mother when she was injured.

The trial court heard testimony from the mother and the father that the father would not allow the children to participate in extracurricular activities because of the week-to-week custody arrangement.

The trial court heard testimony from two guardians ad litem, Elizabeth Hiatt and Elizabeth Fordham.[1] Hiatt testified that her "recommendation was for [the mother] to have custody." Hiatt based this recommendation on her home evaluation, "circumstances regarding the children," and that "the children are taken care of primarily by [the mother]." However, Fordham testified that her recommendation was that "[the mother's] request to have the children full-time be denied. At a minimum . . . the arrangement should stay the way that it is." Fordham further testified that she would not object to the father being primary custodian. Fordham testified that she had never interviewed the mother, but she recognized that the mother "had a really good job, and that [the mother] was in a really good house, and that she's been married, and their marriage was stable." Fordham acknowledged that Hiatt had been in both parties' homes while she had not, and she agreed that generally a person who interviews both parents and sees both of their homes would have a better understanding of the comparison between the two.

Prior to the close of the evidence the trial court stated,

---

[1] Hiatt was appointed to investigate the mother and Fordham was appointed to investigate the father.

[T]he children shouldn't lose by saying oh, my gosh, we're only going to see mommy every other weekend. That can still happen. The kids shouldn't lose by saying oh, my gosh, we're only going to get to see dad every other weekend. You know, those would both be horror stories for you. But, logistically, the week to week is also something that is a little bit difficult, okay? So, here is what I'm thinking about doing. I've done this once before and never heard back from the people that it didn't work. And, I've seen people agree to this once before, and never heard back that it didn't work. And, that is, instead of dividing custody week to week, divide it year to year. And, the reason that could happen is because we now have, I think, a common core curriculum. And, I think the curriculum all across Georgia is about the same . . . [T]he kids are going to have friends in both places.

The trial court asked the attorneys if they had discussed the possibility of a year-to-year custody arrangement and the father's attorney responded, "No, sir." The trial court replied, "No surprise. That's why I do what I do." At the conclusion of the evidence, the mother's attorney expressed concerns about the proposed year-to-year custody arrangement, including concerns about the children changing schools every year. The trial court responded, "[A]ren't you ignoring that there are also benefits in being a new kid in school?" The trial court further stated, "Show me how [the year-to-year custody arrangement] is harmful."

Following the trial, the court entered an order providing that,

[The] [f]ather shall have primary physical custody of and final decision making authority for said minor children beginning July 1, 2015, at noon until July 1, 2016, at noon at which time the [f]ather shall have primary physical custody and final decision making authority for the minor children until July 1, 2017, at [n]oon; and shall continue this annual alternation of primary physical custody and final decision making authority each year changing over on July 1st at [n]oon for said minor children until each respectively attains the age of eighteen years, graduates high school, marries or otherwise becomes emancipated.

It is from this order that the mother now appeals.

1. The mother contends that the trial court erred by entering the custody order because it is self-executing without making a determination as to whether the custody change is in the best interests of the children. We agree.

"Self-executing change of custody provisions allow for an 'automatic' change in custody based on a future event without any additional judicial scrutiny." *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003). Our Supreme Court has held that, "[w]hile self-executing change of custody provisions are not expressly prohibited by statutory law . . . any such provision that fails to give paramount import to the child's best interests in a change of custody as between parents violates this State's public policy as expressed in OCGA § 19-9-3." Id. at 375.

The trial court's order changes the parent who "will have primary physical custody of and final decision making authority" for the children each year on July 1st until each of the children "attains the age of eighteen years, graduates high school, marries or otherwise become emancipated" without any "determination whether the custody change is in the best interest of the parties' [children] at the time the change would automatically occur." *Scott*, 276 Ga. App. at 377. In the absence of an annual hearing prior to the change in custody, "[the order] violates this State's public policy as expressed in OCGA § 19-9-3 that a trial court take into account the factual situation at the time the custody modification is sought, with the court's 'paramount concern' always remaining the best interests and welfare of the minor child." (Citation and punctuation omitted.) *Bankston*, 332 Ga. App. at 35 (2) (reversing a self-executing provision automatically changing custody after 18 months). See *Scott*, 276 Ga. at 377 (vacating divorce decree with direction that the trial court set aside provision therein which automatically transferred physical custody to the father in the event the mother moved outside of her county of residence); see also *Dellinger v. Dellinger*, 278 Ga. 732, 736 (1) (609 SE2d 331) (2004) (reversing trial court's order imposing a self-executing change in visitation should the mother move more than 35 miles outside her county of residence). Compare *Lester v. Boles*, 335 Ga. App. 891,

893 (1) (782 SE2d 53) (2016) (finding no abuse of discretion in self-executing provision that was not open-ended or arbitrary and "gave paramount import to the child's best interests") (punctuation and footnote omitted). Therefore, we reverse the trial court's order.

2. The mother contends that the trial court erred by entering the custody order because there was no evidence that the terms of the order are in the best interests of the children. We agree.

Pursuant to OCGA § 19-9-3 (a) (2), when determining the issue of custody of minor children, "[t]he duty of the judge . . . shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will promote the child's welfare and happiness and to make his or her award accordingly."

In the instant case, the effect of the trial court's order is to require the children to change schools, homes, school friends, and extracurricular activities every year. There was no evidence presented that these changes would be in the best interest of the children. Both guardian ad litems had finished their testimony before the trial court pronounced that it was considering an annual change in custody. Neither guardian ad litem recommended an annual change in custody or testified as to what effect an annual change in custody would have on the children. Furthermore, while

8

the trial court believed that there are benefits to being the new kid in school, no evidence was presented that changing schools every year would be in the best interest of *these* children.

Because there is no evidence in the record to support a finding that the best interests of the children would be served by the annual change in custody, we reverse the trial court's order and remand for the trial court to further consider this issue consistent with this opinion. See *Lifesy v. Lifesy*, 256 Ga. 613 (3) (351 SE2d 637) (1987) ("There is *no* evidence in the record that might support findings that the best interests of the children will be served by requiring that they change residences, school systems, circles of friends, activities, and states on a yearly basis."); see also *Steed v. Deal*, 225 Ga. App. 35 (3), (482 SE2d 527) (1997) ('[T]here is no evidence in the record that might support a finding that the best interest of the child will be served by requiring that he change residence, school system, special education teachers, doctors, therapists, circle of friends, activities, and states on a yearly basis.")

*Judgment reversed and case remanded. Barnes, P. J., and Boggs, J., concur.*