**THIRD DIVISION**
**MILLER, P. J.,**
**ELLINGTON, P. J. and GOBEIL, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 19, 2018**

# In the Court of Appeals of Georgia

A18A1230. BRIDGER v. FRANZE.

GOBEIL, Judge.

On appeal from the trial court's grant of joint legal custody to the parents of a child, the mother, Betsy Bridger, argues that the court abused its discretion in refusing to award her sole physical and legal custody; in including a self-executing change of custody provision in its parenting plan; in its calculation of child support; and in failing to award her past child support expenses and attorney fees. We affirm the trial court's award of joint physical and legal custody as well as the court's refusal to award attorney fees, but we reverse the award of child support and the portion of the judgment containing the self-executing change in custody and remand for further proceedings on those issues.

When considering a dispute regarding the custody of a child, a trial court has very broad discretion, looking always to the best interest of the

child. This Court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion.

*Williams v. Williams*, 295 Ga. 113, 113 (1) (757 SE2d 859) (2014) (citations and punctuation omitted). "We are mindful that the Solomonic task of making custody decisions lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Bankston v. Warbington*, 332 Ga. App. 29, 29-30 (771 SE2d 726) (2015) (citation and punctuation omitted).

Thus viewed in favor of the trial court's judgment, the record[1] shows that the mother and father became involved in a romantic relationship in December 2011, while both were living in Colorado. After a brief period in North Carolina, the mother returned to Colorado in March 2014, after which she learned that she was pregnant. When the father told the mother that she "could just disappear," the mother notified Colorado police, at which point she learned of prior police reports implicating the father in sexual assaults against other women. After a second period in North

---

[1] We note that the father has not filed an appellee's brief. We are therefore entitled to accept the mother's statement of facts as true for purposes of our decision. Court of Appeals Rule 25 (b) (1).

Carolina, the mother returned to Colorado in November 2014 at the father's request, but could not find suitable work as a nurse anesthetist. The child at issue, a girl, was born on December 1, 2014. Both mother and father signed the child's birth certificate.

In the months after the child's birth, the mother found work in California as a travel nurse anesthetist. The mother, the father, and the child moved to California and hired a nanny. On one occasion when the nanny could not come to work, the father left the child in her stroller on the sidewalk outside the parties' home while he went inside to charge his phone. In June 2015, the family moved back to North Carolina. Three months later, the mother and child moved to Atlanta, where the mother began a permanent position at a surgery center. In November 2015, the father arrived in Atlanta, at which point the relationship between the parties deteriorated (for example, after the mother attempted to correct the father's parenting, the father insulted the mother, the mother slapped the father, and the father walked away with the child, at which time the mother called police to the scene).[2]

After a holiday visit to Colorado, the mother and child returned to Atlanta in early 2016. In the weeks that followed, the parties engaged in disputes as to the father's ability to watch the child at daycare via remote camera, his request to pay the

---

[2] No charges were filed arising from this incident.

child's daycare expenses, and his deposits into and withdrawals of money from the mother's bank account.

In March 2016, the father filed the instant verified petition for legitimation, joint legal and secondary physical custody, visitation, name change, and child support. After a DNA test confirmed that the child was the father's biological child, the parties agreed to the appointment of a guardian ad litem (GAL), who supervised the father's visitation of June 21, 2016. Following this visit, the GAL documented incidents including the father's allowing the child to stand too close to a batting cage net, giving her a stemless wine glass to drink out of, which the GAL feared could have broken and injured the child, and allowing her to wander around the father's home unsupervised, at the end of which she was found chewing on window blind cords. The GAL also observed the father display positive parenting behaviors, including fostering independence and "teaching her verbally."

On the GAL's recommendation, and with the father's agreement, a psychologist supervised the father's next three visits, after which the GAL recommended that the father be given some unsupervised visits beginning in September 2016. After a status conference held on October 20, 2016, the father attempted to pick up the child from school a day before he was authorized to do so,

4

which alarmed both the school administrators and the mother. At a mediation session held on October 24, 2016, the father's counsel withdrew from the case, and negotiations between the parties ceased.

On December 15 or 16, 2016, the mother arrived at the father's home and saw that the child was carrying an open jar of gummy fish oil supplements. When the mother asked how many gummies the child had eaten, the father replied, "only one or two." Shortly afterward, however, the child vomited between 15 and 20 gummies. The mother took the child to the pediatrician, and the pediatrician reported the incident to the Department of Family and Children Services; and, the GAL then revoked the father's unsupervised visitation. The father's last contact with the child before the August 2017 bench trial was during a shopping trip in December 2016 in the company of the mother's parents.

At the bench trial, and in addition to the evidence outlined above, the mother presented evidence that the father had failed to pay child support consistently or appropriately from January 2016 until the trial and supporting her request for $2,080.00 in monthly child support. The mother also presented documentary evidence to support her claim for attorney fees and expenses in the amount of $116,598.92. She

further argued that in light of the father's effective abandonment of both the child and the litigation he had initiated, she should be awarded sole custody.

The trial court later entered a final order finding in relevant part that it was "in the best interest of the minor child for the parties to have joint legal and physical custody," with the mother "being the primary physical custodian"; that based on the mother's child support worksheet and the father's failure to submit the same, the mother's income was $15,100 per month and her child care expenses, including health insurance premiums, totaled $1,034.74 per month; and that the mother's "insistence" that the father's petition be denied unless she was awarded sole legal and physical custody had "unnecessarily prolonged [the] proceedings." The trial court then stated its conclusions of law, including that under OCGA § 19-9-3, it was "in the best interest of the child that the [p]arties be awarded joint legal and physical custody of the child, with the mother being the primary custodian and [the] [f]ather having parenting time as outlined in" the permanent parenting plan attached to the order, which specified that "if the [f]ather should relocate to the Atlanta area, the parties shall have joint [physical] custody." The court also held that the father should pay the mother $1,357.00 per month in child support, that the mother should continue to pay

6

the child's health insurance costs, and that the mother's request for reimbursement of past child support expenses and attorney fees was denied. This appeal followed.

1. The mother first argues that the trial court abused its discretion in failing to award her sole physical and legal custody of the child because the evidence demanded such an award and that it specifically erred in its factual finding that the GAL had recommended that the father could begin unsupervised parenting time with the child. We disagree.

As a preliminary matter, the record shows that the GAL did at one point permit the father to begin unsupervised visitation (before it was revoked in the wake of the fish oil gummies incident). The trial court's statement about the father's right to begin unsupervised parenting time came at the beginning of its order as part of a recitation of the factual background of the case, and was not incorrect when viewed in the context of the entire record. Construing the record, including the trial court's order, in favor of the judgment, as we are required to do, we find no error.

We are not entitled to substitute our own judgment for that of the trial court on the question of whether joint custody was in the child's best interest. On the contrary, there was some evidence in the record, including the father's positive interactions with his daughter and the mother's past misbehavior, to support the trial court's

7

decision to award joint physical custody to both parents, with the mother retaining primary physical custody. See OCGA § 19-9-3 (a) (3) (A), (M) (listing factors for consideration in a trial court's determination of a child's best interests, including "[t]he love, affection, bonding, and emotional ties existing between each parent and the child" and "[e]ach parent's past performance and relative abilities for future performance of parenting responsibilities"); *Rose v. Rose*, 294 Ga. 719, 721 (1) (755 SE2d 737) (2014) (evidence supported trial court's award of joint legal custody of a child to both parents, with primary physical custody to father).

2. The mother also argues that the trial court erred when it included a self-executing change of custody in favor of the father in the parenting plan attached to and incorporated in the court's final order. We agree.

As the Supreme Court of Georgia has repeatedly held, a self-executing change of custody designed to take effect on the occurrence of a contingent event, such as remarriage or relocation, violates OCGA § 19-9-3 (a) (2), which requires that a trial court exercise its discretion concerning a change in custody in light of the child's best interests as evaluated at the time of the proposed change. See *Scott v. Scott*, 276 Ga. 372, 375-377 (578 SE2d 876) (2003); *Wrightson v. Wrightson*, 266 Ga. 493, 495-496 (3) (467 SE2d 578) (1996). Provisions that do not take account of the best interests

8

of the child at the time of this kind of triggering event "are utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child." *Scott*, 276 Ga. at 375. Thus "self-executing change of custody provisions are not rendered valid merely because the initial award of custody may have been based upon the child's best interests." Id. at 376. Rather, "the factual situation at the time the custody modification is sought" should determine "whether a change of custody is warranted." Id. (citations and footnote omitted).

Our Supreme Court has upheld automatic custody change provisions that contemplated that an older child, upon reaching age 14, may choose the parent with whom the child wishes to reside. See *Weaver v. Jones*, 260 Ga. 493 (396 SE2d 890) (1990); *Pearce v. Pearce*, 244 Ga. 69 (257 SE2d 904) (1979); *Scott*, 276 Ga. at 373-374 (discussing *Weaver* and *Pearce*). Following *Scott* and *Wrightson*, however, this Court consistently has invalidated self-executing changes of custody provisions involving contingent events such as the father's relocation to Atlanta specified in this trial court's parenting plan. See *Bankston*, 332 Ga. App. at 34-35 (2) (reversing a self-executing change of primary physical custody); see also *Hardin v. Hardin*, 338 Ga.

App. 541, 543-545 (1) (790 SE2d 546) (2016) (vacating a self-executing change of visitation). As we explained in *Hardin*:

> A review of the case law regarding prohibited self-executing provisions shows that they can generally be summarized as having one of two critical flaws. First, self-executing provisions that rely on a third party's future exercise of discretion essentially delegate the trial court's judgment to that third party. And, second, self-executing provisions that execute at some uncertain date well into the future are not permitted because the trial court creating those provisions cannot know at the time of their creation what disposition at that future date would serve the best interests of the child; the passage of time (and thus, likelihood of changed circumstances) is just too great.

338 Ga. App. at 544 (1) (citations omitted).

For these reasons, we reverse the trial court's inclusion of a self-executing change of custody contingent on this father's relocation to Atlanta as an abuse of discretion. *Hardin*, 338 Ga. App. at 545-546 (1) (vacating an "automatic change in visitation" conditional on the mother's "good faith completion" of therapy as an abuse of discretion); *Bankston*, 332 Ga. App. at 35 (2) (reversing a self-executing change of custody provision in favor of a mother supposed to take effect 18 months after an award of primary physical custody to the father as an abuse of discretion). We therefore vacate the remainder of the custody order "and remand the case to the trial

10

court to revisit the issue and provide a new order" on the father's petition for modification "consistent with this opinion." *Hardin*, 338 Ga. App. at 546 (1).

3. The mother also argues that the trial court erred in its calculation of child support in that the child support worksheets prepared by the court omitted certain expenses and contradicted the corresponding provisions in the court's final order. Specifically, the mother asserts that the trial court erred in (a) omitting the amount of health insurance premiums from the child support worksheet and (b) failing to include all of her work-related child care expenses in its child support worksheet and final order. We agree.

(a) Georgia's child support guidelines require a trial court to make a series of calculations to arrive at the presumptive amount of child support. *Hamlin v. Ramey*, 291 Ga. App. 222, 223 (1) (661 SE2d 593) (2008). In calculating this amount, a trial court must prorate child care and health insurance expenses between the parents to arrive at an adjusted support obligation. In its final order, the trial court found that the mother pays $187.08 per month for health insurance premiums attributable to the child and ordered the mother to continue to maintain the child's health insurance policy. However, this amount was not reflected in Schedule D of the child support worksheet as required by OCGA § 19-6-15 (h) (2).

11

Because the trial court failed to include the mother's payment of health insurance premiums in calculating the amount of the father's child support obligation, we reverse the award of child support and remand the case to the trial court to factor that consideration into the child support order. See *Dupree v. Dupree*, 287 Ga. 319, 322-323 (5) (695 SE2d 628) (2010) (award of child support reversed where trial court failed to include father's payment of health insurance costs in its calculation of child support obligation).

(b) The mother also asserts that the trial court erred in failing to include the total amount of her work-related child care expenses in its child support worksheet and final order.

> As with health insurance expenses, a trial court must initially prorate child care expenses between the parents to arrive at the adjusted child support obligation, OCGA § 19-6-15 (b) (6), and must then adjust that figure by factoring in the amount of child care expenses actually paid by each parent, OCGA § 19-6-15 (b) (7).

*Dupree*, 287 Ga. at 323 (6). "In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge

the credibility of the witnesses." *Franklin v. Franklin*, 294 Ga. 204, 205 (1) (751 SE2d 411) (2013) (citation omitted).

In its final order, the trial court found that the mother's work-related child care costs were $847.66 per month for a nanny, but did not include the amount the mother pays each month in daycare expenses. The uncontradicted evidence at trial established that the mother works five days per week. The nanny works three hours per weekday, and the child is in daycare for the remainder of the day. The nanny arrives each weekday morning at approximately 6:30 a.m., feeds and dresses the child, and drops her off at daycare. The child then remains at the daycare until the mother picks her up between 4 and 5 p.m. The mother testified that she pays approximately $1,420.46 per month for the child's daycare and that this child care is necessary for the mother to be able to go to work.

The evidence in the record does not support–and, in fact, clearly contradicts–the finding of the trial court that the mother's only work-related child care expenses were those she incurred in hiring a nanny. Because the finding on which the trial court based its award of child support is clearly erroneous, we reverse this portion of the trial court's final order, and remand for further proceedings consistent with this opinion, including a proper calculation of the mother's reasonable

and necessary work-related child care expenses as shown by the record. See *Franklin*, 294 Ga. at 205-207 (1) (partial reversal of final divorce decree required where the trial court's determination of wife's gross monthly income for child support purposes was unsupported by any evidence in the record).

4. The mother also asserts that the trial court abused its discretion when it failed to award her the medical, housing, and other costs already incurred in support of her daughter. We disagree.

Here, there was evidence that the father provided financial support to the mother and child while they were living in Colorado and that he deposited money into the mother's bank account thereafter. Although OCGA § 19-7-24[3] entitled the mother to seek child support from the father, the trial court was entitled as the trier of fact to find that the father had satisfied his past child support obligations and thus to decline her request. See *Charlot v. Goldwire*, 310 Ga. App. 463, 465 (2) (713 SE2d 667) (2011) (the appellate court was required to construe the record in favor of the trial court's determination as to the proper amount of a father's child support obligation).

_____

[3] OCGA § 19-7-24 provides: "It is the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child until the child reaches the age of 18 or becomes emancipated, except to the extent that the duty of one parent is otherwise or further defined by court order."

14

5. The mother also asserts that the trial court erred in refusing to award her attorney fees under OCGA §§ 19-9-3 and 19-7-50. Again, we disagree. Neither of these statutes mandates that a trial court award attorney fees to a prevailing party. On the contrary, both statutes make clear that a trial court presiding over custody or legitimation proceedings "may," but is not obligated to, order such fees in the exercise of its discretion.[4] See *Neal v. Hibbard*, 296 Ga. 882, 891-892 (12) (770 SE2d 600) (2015) (affirming a trial court's determination of a fee award under OCGA § 19-9-3); *Jackson v. Irvin*, 316 Ga. App. 560, 565 (2) (d) (730 SE2d 48) (2012) (even assuming that mother's claim for fees in paternity case was reviewable, there was no basis for concluding that a trial court abused "the extremely broad authority vested in it by OCGA § 19-7-50" in failing to award more than $10,000 in fees). In the

---

[4] See OCGA §§ 19-9-3 (g) (a trial court adjudicating a custody dispute "*may* order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge") (emphasis supplied); 19-7-50 (a trial court adjudicating a legitimation proceeding "*may* order reasonable fees of counsel, experts, and the child's guardian ad litem and other costs of the action and pretrial proceedings, including blood and other tests, to be paid by the parties in proportions and at times determined by the court") (emphasis supplied).

absence of any legal authority supporting her position, the mother's contention has no merit.

In sum, we reverse the trial court's self-executing change of custody provision in favor of the father and therefore vacate the custody award and remand for further proceedings on that issue; we reverse the award of child support and remand for inclusion of the amount the mother pays in health insurance premiums and work-related child care expenses in the child support worksheet and final order; and we affirm the remainder of the trial court's judgment.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Miller, P. J., and Ellington, P. J., concur.*