S95A1805. WRIGHTSON v. WRIGHTSON.
(467 SE2d 578)

BENHAM, Chief Justice.

The final judgment and decree of divorce which dissolved the marriage of appellant Jeannie Wrightson and appellee Michael Wrightson awarded permanent custody of the couple's daughter to appellee/father. In the course of the custody contest, allegations were made that the child had suffered sexual abuse. The trial court's decision to award custody of the child to appellee was based on its findings that appellee was "a committed and capable father" who "can provide excellent care and a wholesome family life" for the child. The trial court further found that the child would benefit greatly from appellee's "nurturing homelife, supportive, child-centered neighbors, and dedicated and helpful extended family." The trial court found no credible evidence that appellee had committed alleged acts of sexual abuse against the child, and reiterated the court-appointed child psychiatrist's observation that the child had "a tremendous amount of safety and trust in [her father]. . . ." While not doubting that appellant/mother loved and cared deeply for the child, the trial court found that appellant's "possessiveness and inability to allow [appellee] to develop and maintain a healthy parental relationship with his daughter ha[d] become obsessive" and injurious to the child and, if allowed to continue, could have "devastating long-term effects" on the child. We granted appellant's application for discretionary review of the trial court's judgment.

The appellate record and the accompanying transcripts evidencing the 11 days of hearings held by the trial court bear witness to a family tragedy that has spilled over from Georgia into North Carolina and Missouri. The divorce proceedings have formally dissolved what was a Georgia family unit, with appellant currently living in Georgia, appellee in North Carolina, and their soon-to-be six-year-old daughter residing with her paternal grandmother in Missouri.

As soon as it became apparent that custody of the child was contested, the trial court appointed a guardian ad litem for the child and later, a child adolescent psychiatrist to conduct a psychological evaluation of the parties and their daughter. Initially, appellant was awarded temporary custody of the child, with the child visiting her father's North Carolina home. The visitation arrangement was suspended when allegations were made that appellee had sexually

abused his daughter, as well as the four-year-old daughter of his fiancee. The allegations were the culmination of a telephone conversation appellant had with North Carolina authorities expressing concern for the child's well-being while visiting appellee. Before it was dismissed for lack of evidence, the allegation concerning the fiancee's daughter caused the removal of that child from the home she shared with her mother and appellee, as well as the suspension of unsupervised visitation between appellee and his daughter.

Upon the return of the fiancee's child to her home with her mother and appellee, the Wrightsons' daughter was judicially permitted to resume visitation in appellee's North Carolina home. During the first visitation thereafter, appellee saw North Carolina authorities approaching his home and, fearing they were going to remove his daughter and place her in foster care as they had his fiancee's daughter, appellee returned the child to Georgia, where he consulted with his attorney, the guardian ad litem, and the court-appointed child adolescent psychiatrist. While his attorney successfully petitioned the trial court for an extension of the visitation period and an emergency hearing, appellee took the child to his mother's home in Missouri. He then returned to Georgia for a three-day emergency hearing after which the trial court gave temporary custody of the child to appellee, with physical custody of the child to remain with her paternal grandmother. Both parents were restricted to telephonic visitation with the child. Six weeks later, the trial court entered the final judgment and decree of divorce, giving permanent custody of the child to appellee, and setting a two-year schedule of supervised visitation, followed by liberal and unsupervised visitation privileges for appellant. Contemplating that appellee would have the child remain with her paternal grandmother until the North Carolina investigations were concluded, the trial court authorized the child's continued temporary residency in Missouri until appellee informed his mother that the North Carolina proceedings had been resolved such that the child could return to her father's home.

1. The majority of appellant's enumerated errors center around those portions of the trial court's judgment which concern the award of child custody and visitation. Appellant contends the trial court abused its discretion in awarding sole and permanent custody of their daughter to appellee.

"In a contest between parents over the custody of a child, the trial court has a very broad discretion, looking always to the best interest of the child, and may award the child to one even though the other may not be an unfit person to exercise custody or had not otherwise lost the right to custody. . . . Where in such a case the trial judge has exercised [her] dis-

cretion, this court will not interfere unless the evidence shows a clear abuse thereof. . . . In a case such as this, it is the duty of the trial judge to resolve the conflicts in the evidence, and where there is any evidence to support [her] finding it cannot be said by this court that there was an abuse of discretion on the part of the trial judge in awarding custody of the minor child to the father." [Cit.]

*Anderson v. Anderson*, 240 Ga. 795 (2) (242 SE2d 593) (1978). The testimony of appellee's North Carolina neighbor, appellee's fiancee, the court-appointed child psychiatrist, a physician who examined the child in light of the allegations of abuse, appellant's former roommate, and the guardian ad litem support the trial court's findings. As there is evidence to support the award of permanent custody to the father, the trial court did not abuse its discretion, and that part of the judgment awarding permanent custody of the child to her father is affirmed. *Brand v. Brand*, 244 Ga. 124 (259 SE2d 133) (1979).

2. Appellant contends the trial court made a prospective award of custody to appellee and an impermissible temporary award of custody in the final judgment and decree of divorce when it determined that the child should remain with her paternal grandmother until the North Carolina proceedings are resolved and it is safe for the child to return to her father's home. Contrary to appellant's assertion, the trial court's judgment clearly awards permanent custody of the child to appellee. Compare *Banister v. Banister*, 240 Ga. 513 (241 SE2d 247) (1978) where, in the final judgment of divorce the trial court gave temporary custody of the children to one party and reserved the question of permanent custody for determination at a later date. Since the judgment issued by the trial court awarded permanent custody of the child, it was not an attempt to retain jurisdiction. Compare *Buck v. Buck*, 238 Ga. 540 (1) (233 SE2d 792) (1977).

3. The final judgment delineated appellant's visitation privileges and required that visitation be supervised for the first two years. In not more than two years, appellant is entitled to the reasonable, liberal, unsupervised visitation privileges to which the parties agree.[1] The supervised visitation is subject to suspension or modification should either the therapist treating the child or the therapist treating appellant determine that appellant is a risk to the child's emotional or physical safety or well-being, or presents a risk of fleeing with the child. Appellant maintains that the order calls for an improper self-

---

[1] The trial court provided a visitation schedule within its order in the event the parties were unable to come to an agreement. Compare *Shook v. Shook*, 242 Ga. 55 (2) (247 SE2d 855) (1978), where this Court held the trial court abused its discretion by refusing to specify a visitation schedule to take effect in the event the parties were unable to agree on visitation.

executing suspension or modification of visitation contingent upon the determination of a therapist.

We agree. " 'Visitation privileges are, of course, part of custody. (Cit.)' [Cit.]" *Prater v. Wheeler*, 253 Ga. 649 (322 SE2d 892) (1984). It is the trial court's responsibility to determine whether the evidence is such that a modification or suspension of custody/visitation privileges is warranted, and the responsibility for making that decision cannot be delegated to another, no matter the degree of the delegatee's expertise or familiarity with the case. While the expert's opinion may serve as evidence supporting the trial court's decision to modify or suspend visitation, the decision must be made by the trial court, not the expert. Accordingly, we reverse that part of the visitation portion of the final judgment which states that supervised visitation "shall be suspended or modified during such time that either therapist determines [appellant] presents a risk to [the child's] emotional or physical safety or well-being or presents a risk of fleeing with [the child]," and remand the case to the trial court for modification of that portion of the final judgment. Cf. *Chandler v. Chandler*, 261 Ga. 598 (1) (409 SE2d 203) (1991).

4. Also contained in the final judgment is the trial court's denial of appellant's motion to find appellee in contempt for failure to pay child support and alimony. The trial court found there was an arrearage but that appellee had not had the financial means to make the payments. Appellant contends the trial court erred when it refused to find appellee in contempt for his failure to pay child support. "The trial court in a contempt case has wide discretion to determine whether [its] orders have been violated. [Its] determination will not be disturbed on appeal in the absence of an abuse of discretion. [Cits.]" *Davis v. Davis*, 250 Ga. 206, 207 (296 SE2d 722) (1982). The trial court's determination that appellee's failure to pay was due to inability will not be disturbed except for a gross abuse of discretion. *Parr v. Parr*, 244 Ga. 168 (1) (259 SE2d 432) (1979). Finding no such abuse, we decline to disturb the trial court's resolution of the issue.

5. After ordering the parties to bear their own costs of litigation, including attorney fees, the trial court, citing OCGA § 9-15-14, ordered appellant and her counsel to pay appellee the reasonable attorney fees he incurred in bringing his emergency motion for change of temporary custody. The trial court based its order on its determination that the need for judicial intervention was due to the conduct of appellant and her counsel, that is, the proceedings were unnecessarily expanded by improper conduct of appellant and her attorney. OCGA § 9-15-14 (b). An award pursuant to OCGA § 9-15-14 (b) "is discretionary and the [appellate] standard of review is abuse of discretion." *Haggard v. Bd. of Regents*, 257 Ga. 524 (4) (c) (360 SE2d 566) (1987). As there is evidence which supports the trial court's find-

ing that the emergency hearing was caused by appellant and her counsel arranging interviews of the child by North Carolina authorities without making the court aware of the development, we find no abuse of discretion on the part of the trial court and decline to disturb the award.

6. In its final judgment, the trial court observed that the guardian ad litem had "maintained a continuing commitment to assure that [the child's] welfare and safety are protected." As the evidence of record supports the trial court's determination, we cannot say the trial court abused its discretion by failing to disqualify the guardian ad litem.

7. While this matter was pending before it, the trial court issued an order asserting its exclusive personal jurisdiction over the child and ordering investigatory personnel to ask the trial court's permission should they wish to subject the child to questioning or a physical examination in the course of their investigations. In light of our remand to the trial court for reconsideration of the limitation placed upon visitation (see Division 3, supra), we take this opportunity to remind the trial court that the courts of this state have no extra-territorial jurisdiction and lack personal jurisdiction over the citizens of other states. *Ashburn v. Baker*, 256 Ga. 507 (2) (350 SE2d 437) (1986).

*Judgment affirmed in part, reversed and remanded in part. All the Justices concur, except Fletcher, P. J., and Hunstein, J., who dissent in part.*

FLETCHER, Presiding Justice, concurring in part, and dissenting in part.[2]

I have no hesitation concluding that a trial court abuses its discretion when it awards permanent and sole custody of a five-year-old girl to the father who is the subject of an ongoing, active investigation into allegations that he molested that child. The "any evidence" standard is a highly deferential standard. Deference in the face of the extreme decisions of the trial court in this case, however, amounts to an abdication of our responsibility to reverse the trial court when there has been a clear abuse of discretion.

1. Six weeks before the award of custody was made, the trial court heard testimony from a special agent from the North Carolina State Bureau of Investigation who stated that the father was the subject of a criminal investigation into whether he had abused his child when she was in North Carolina for court-ordered visitation. The agent testified that the investigation began in September 1994, was

---

[2] I concur in the holding in Division 3 that the trial court abused its discretion in allowing a therapist to suspend or modify visitation.

ongoing, and the agent planned to present a case to a grand jury. Additionally, the agent testified that while the mother had first contacted North Carolina authorities in August 1994, she had no role in their continuing investigation. The trial court allowed the agent to testify regarding only the status and not the details of the investigation. Therefore, it cannot be said that the trial court weighed the evidence held by the North Carolina authorities and found it lacking or that the mother's allegations were the sole basis of the investigation.[3]

2. The trial court's disdain for the North Carolina investigation is shown in two other respects.

(a) Prior to entering the final decree and judgment, the trial court issued an order requiring the North Carolina investigatory and social services agencies to seek permission from the trial court before conducting any interviews of the child. A court of this state clearly has no authority to direct authorities in another state who are investigating possible criminal behavior committed within their jurisdiction.[4]

(b) Finally, the trial court actually approved the father's flight from North Carolina with the child to avoid the police. In March 1995, the child was in North Carolina for court-ordered visitation that was to take place "at his home in Asheville, North Carolina." During that visitation, the father and child were in a nearby park when he observed police approaching his house. Believing that the police had a court order to remove the child from his house or an indictment against him, he hid for several hours and sent the child off with neighbors so she would not be found. Then later that night, without informing the child's mother or her counsel, he took the child and the two fled North Carolina. He and the child spent the night on the road, drove to Atlanta, and then took the child to his mother's home in Missouri. Incredibly, following an emergency hearing[5] the trial court validated the father's actions in spiriting the child away under cover of darkness to evade police by placing temporary custody with his relatives in Missouri.

3. While the trial court shut its eyes to an ongoing, active investigation in another state, and approved the father's intentional avoidance of that investigation, it relied on a court-appointed psychiatrist who testified that he spent no more than one hour alone with the child and who was "convinced right off the bat" that there was no abuse when he observed the child and father together in his office.

---

[3] The trial court did hear testimony that the North Carolina authorities had insufficient evidence to proceed against the father for molesting his live-in-lover's child.

[4] The North Carolina Attorney General filed an amicus brief that discusses the constitutional and statutory provisions in that state regarding investigation of child abuse and the protection of minor child who may be abused.

[5] The emergency hearing was initiated by the father who was in violation of the court's prior order at the time he brought the emergency motion for a change of custody.

Evidence of the father's "wholesome family life"[6] cannot overshadow the reality of an ongoing, active criminal investigation. Clearly, the trial court's custody determination was not based on then existing facts, but on the court's hopeful assumption that the father would be cleared. Under these extreme and unusual circumstances, I would find that the trial court abused its discretion and would remand for additional evidence and a new determination of custody.

4. Finally, I cannot agree that the trial court was authorized in its final order to allow custody to shift from the grandmother in Missouri to the father based solely on *the father's* notification to his relatives that the North Carolina proceedings were over. This Court has never before approved a self-executing change of custody based on a parent's unverified assertion that he has been cleared in a child abuse investigation and we should not do so now.

I am authorized to state that Justice Hunstein joins in this partial concurrence and partial dissent.

DECIDED MARCH 15, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996.

*Patricia B. Ball,* for appellant.
*Stern & Edlin, George S. Stern, Janis Y. Dickman,* for appellee.

---

[6] Prior to obtaining a divorce, the father began living with another woman and fathered a child out of wedlock.