**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 18, 2016**

# In the Court of Appeals of Georgia

A16A1210. HARDIN v. HARDIN.

PETERSON, Judge.

Douglas Andrew Hardin (the "father") appeals the trial court's order permitting Rita Hardin a/k/a Rita Barbagallo (the "mother") to resume visitation with her youngest son in the form of weekly therapeutic sessions. He argues the trial court erred by entering a self-executing change of visitation, by failing to include a parenting plan with the order, and by failing to consider the best interests of the child. Because we find the court's order to be a self-executing change of visitation of the sort prohibited under Georgia law, we vacate the order.

"A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. And where there is any evidence to support the trial court's ruling, a reviewing court cannot say

there was an abuse of discretion." *Ezunu v. Moultrie*, 334 Ga. App. 270, 272 (779 SE2d 44) (2015) (punctuation and citation omitted).

So viewed, the record shows the father filed a motion to modify custody and visitation, seeking sole physical custody and limitation of the mother's visitation in accordance with the recommendation of a guardian ad litem. The mother's regular visitation privileges with her children were later temporarily suspended by consent of the parties.[1] Before deciding the father's motion, the trial court elected to gather more information, including a professional evaluation. In late 2014, the professional evaluator submitted his report, in which he noted significant concerns about the mother's mental health and concluded that he did not believe it to be in the best interests of the children to permit visitation without the mother first receiving substantial treatment. The children also submitted statements to the court that they did not wish to have visitation or counseling with their mother.

In May 2015, the court held a hearing acknowledging the report and issued a final ruling. Although no change in the mother's condition is apparent from the record, the trial court entered an order on December 17, 2015 permitting the mother

---

[1] The consent order between the parties was entered in 2012, and the mother had not had visitation with the children since.

to resume visitation with her youngest son[2] in the form of weekly therapeutic sessions after she completed eight weeks of counseling on her own "for the following two months." The trial court order provided that

> [t]he mental health professional shall be provided the report of [the professional evaluator], and at the conclusion of the two months shall make certain recommendations as to any further treatment and other terms and conditions regarding mental health which shall be followed by [the mother]. Upon a good faith completion of eight weeks, and a report to this Court which evidences completion of this therapy and [the mother]'s progress, [the mother] shall be entitled to initiate visitation with the younger child . . . by engaging a child psychologist to supervise and assist in weekly therapeutic sessions with [the younger child]. This shall continue until the child reaches the age of majority.

The court stated that it believed it to be in the "long-term best interest of the child" to attempt to repair the child's relationship with the mother. The father contends, and the mother does not dispute, that on December 24, 2015 — just seven days after entry of the trial court's final order — the mother's therapist[3] submitted a certificate of

---

[2] The trial court acknowledged the older child turned 18 in May 2015.

[3] The father complains that the mother's therapist who submitted the certificate of completion also served as her expert witness.

3

completion, though this document does not appear in the record before us. This appeal followed.

1. The father argues that the trial court erred by entering an impermissibly self-executing order that provides for an automatic change of visitation. We agree.

"Visitation privileges are, of course, part of custody." *Wrightson v. Wrightson*, 266 Ga. 493, 496 (3) (467 SE2d 578) (1996) (citation and punctuation omitted).

> Self-executing change of custody provisions allow for an "automatic" change in custody based on a future event without any additional judicial scrutiny. Our Supreme Court has held that "any self-executing change of custody provision that fails to give paramount import to the child's best interests in a change of custody as between parents must be stricken as violative of Georgia public policy."

*Lester v. Boles*, 335 Ga. App. 891, 892 (1) (782 SE2d 53) (2016) (citing *Dellinger v. Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004)). But not all self-executing provisions are invalid. Rather, we must closely examine the nature of any such provision in determining whether it fails "to give paramount import to the child's best interests[.]" *Id.*

In *Weaver v. Jones*, 260 Ga. 493 (396 SE2d 890) (1990), and *Pearce v. Pearce*, 244 Ga. 69 (257 SE2d 904) (1979), our Supreme Court upheld automatic custody

4

change provisions that contemplated that an older child, upon reaching age 14, may choose the parent with whom the child wishes to reside. *See Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003) (discussing *Weaver* and *Pearce*). And in *Lester*, we upheld a self-executing provision that altered custody when the child began first grade, noting that the provision was not invalid because the change in custody was not conditional upon an event that may never occur and was "not an arbitrary change that may or may not affect the child's best interests at some unknown date[.]" *See Lester*, 335 Ga. App. at 893 (1).

But other self-executing provisions that create an automatic change of custody based solely on a custodial parent's relocation within the country or remarriage, or a counselor's determination of readiness — without regard to the child's best interests at the time of the change — have been rejected. *See Johnson v. Johnson*, 290 Ga. 359, 359-60 (721 SE2d 92) (2012) (reversing trial court judgment with direction that the trial court strike the self-executing provision of the decree that allowed termination of supervised overnight visits to occur based on a counselor's determination of readiness); *Dellinger*, 278 Ga. at 734-36 (1) (609 SE2d 331) (2004) (reversing trial court judgment with direction that the trial court strike the self-executing provision of the decree that altered custody if the mother moved); *Scott v. Scott*, 276 Ga. 372,

5

376 (578 SE2d 876) (2003) ("Remarriage and relocation directly affect a child but they do not automatically warrant a change in custody."). "It is the trial court's responsibility to determine whether the evidence is such that a modification or suspension of custody/visitation privileges is warranted, and the responsibility for making that decision cannot be delegated to another, no matter the degree of the delegatee's expertise or familiarity with the case." *Wrightson*, 266 Ga. at 496 (3) (citation and punctuation omitted).

The question for this Court to resolve, then, is whether the self-executing provision challenged here is the sort prohibited under Georgia law. A review of the caselaw regarding prohibited self-executing provisions shows that they can generally be summarized as having one of two critical flaws. First, self-executing provisions that rely on a third party's future exercise of discretion essentially delegate the trial court's judgment to that third party. *See, e.g.*, *Johnson*, 290 Ga. at 359-60. And, second, self-executing provisions that execute at some uncertain date well into the future are not permitted because the trial court creating those provisions cannot know at the time of their creation what disposition at that future date would serve the best interests of the child; the passage of time (and thus, likelihood of changed circumstances) is just too great. *See Dellinger*, 278 Ga. at 735 (automatic change in

6

visitation without any regard to the circumstances existing in the children's lives at the time of the change is "utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child").

The mother argues that the challenged provision here is akin to that examined in *Lester* because there appears to be a date determinative for the change in visitation — her completion of eight weeks.[4] And she argues that the trial court considered the best interests of the child when it entered the order, as expressly acknowledged therein, noting that an attempt to repair the child's relationship with the mother would be in the "long-term best interest of the child[.]" But as the mother points out in her appellate brief, "[t]he true potential vice in this sort of self-executing change, as Father and the decided cases envisions that evil, is delegation of judgment to another." Indeed, we have instructed trial courts to strike such provisions in those cases in which the trial court has delegated its authority to determine the timing of

---

[4] The provision could also be interpreted as the trial court retaining jurisdiction to review the mother's progress as reported to it and determine whether it is sufficient to trigger visitation. However, that interpretation is not available to us given the court's designation of the order as "final," because the trial court, in so designating its order, demonstrated its intent to divest itself of jurisdiction to do any further analysis of the mother's compliance with its order.

custody transitions or modifications to a counselor. *See Wrightson*, 266 Ga. at 495-96 (3), *Johnson*, 290 Ga. at 359-60. That is essentially what has happened here.

Under the terms of the order at issue, the counselor is to "make certain recommendations as to any further treatment and other terms and conditions regarding mental health which shall be followed by [the mother]." Upon a "good faith completion of eight weeks" of therapy, a report is to be made to the trial court (it is unclear by whom) evidencing completion of this therapy and the mother's progress. Once these events have occurred, the mother is entitled to initiate visitation with the child in the form of weekly therapy sessions. Under the trial court's order, this transition in custody is automatic, and although it is unclear precisely who has the ultimate responsibility for reviewing the report to determine whether it sufficiently evidences the mother's "progress" and completion of the required therapy, it is clear that it is not the court. This is troubling for precisely the reason the father argues in his appeal — the mother may not actually have made "progress" in her therapy in the sense that the trial court intended, or she may not be complying with the counselor's additional treatment recommendations or the rest of the court's order. Indeed, the mother attempted to resume visitation almost immediately following entry of the order, despite not having complied with its instruction that she complete eight weeks

of therapy "for the *following* two months."[5] This makes the event triggering the automatic change in visitation arbitrary, with "only a tangential connection" to the child's best interests. *Lester*, 335 Ga. App. at 893 (1). Thus, the order lacks "the flexibility needed to adapt to the unique variables that must be assessed in order to determine what serves the best interests and welfare of a child." *Lester*, 335 Ga. App. at 892-93 (1) (citation and punctuation omitted). For this reason, we find that this provision in the trial court's order constitutes an abuse of discretion, and accordingly, we vacate the order and remand the case to the trial court to revisit the issue and provide a new order on the father's motion consistent with this opinion.

2. Because of our holding in Division 1, we need not address the father's other enumerations of error.

*Judgment vacated and case remanded. Phipps, P. J., and Dillard, J., concur.*

---

[5] The mother argues that she was able to anticipate the amount of court-ordered therapy and completed it in advance, but points to nothing in the record supporting her argument.