**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 12, 2018**

# In the Court of Appeals of Georgia

A18A0002. WEISS v. GRANT.

McFADDEN, Presiding Judge.

This appeal challenges a trial court order modifying a child custody order from another state and ordering payment of a child support arrearage. Contrary to the appellant's claims, the trial court had jurisdiction to modify the foreign custody order. The court did not err in modifying the prior order. The order addresses the appellee's past misconduct and does not exceed the scope of the court's discretion. But the appellant is correct that the trial court erred in ordering the appellee to repay a child support arrearage at the rate of $100 per month, which improperly postpones the bulk of the payments until after the children have reached the age of 18. Accordingly, we affirm in part and reverse in part.

Sarah Weiss and Larry Grant were married in 2007, separated in 2008, and divorced in 2011. The final divorce decree, entered by the Superior Court of Paulding County, Georgia, found that the parties had two minor children, L. G. and T. G.; that Weiss and the children were residents of South Carolina; and that a child custody action was pending in a South Carolina Family Court.[1] The South Carolina court had previously entered a temporary order giving the parents joint custody of the children, designating Weiss as the primary physical custodian, and awarding Grant one week of visitation each month.

In April 2011, after a scheduled visitation, Grant failed to return the children to Weiss, purportedly because Weiss was allowing a convicted child abuser to be around the children. Weiss has disputed that allegation. Grant apparently moved out of his home in Paulding County, took the children to live with him at different homes both in and out of state, and concealed those locations from Weiss. On April 27, 2012, the South Carolina court entered a final custody order finding that Grant had fled with the children and that they were still missing, granting sole custody of the children to Weiss, and suspending Grant's visitation.

---

[1]The parties had agreed to have the Georgia court handle their divorce and the South Carolina court handle child custody issues.

In October 2012, Grant and the children were found by police living in Alabama. Grant was arrested on an outstanding South Carolina warrant and the children were returned to Weiss. Grant pled guilty in South Carolina to a misdemeanor charge of interfering with child custody and was given a probated sentence, which he completed.

Grant filed a complaint in Paulding County Superior Court for modification of the South Carolina order which had awarded sole custody to Weiss and had suspended his visitation. Weiss filed an answer and motion to dismiss the action for lack of jurisdiction. The trial court denied the motion to dismiss, finding that it had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), OCGA § 19-9-40 et seq. A hearing was held on July 1, 2015, during which the trial judge stated that while he was not, at that point, going to change custody, he was going to appoint a psychologist or counselor to evaluate the family and make a recommendation to the court on "the question of what to do about these children and . . . their parents in the future." The court directed the parties to meet and see if they could agree on a person to conduct the evaluation.

On September 9, 2015, the trial court entered a temporary order which, pursuant to the parties' agreement, appointed clinical psychologist Dr. Robert Shaffer

to evaluate the family and make a recommendation about what "is in the [c]hildren's best interests regarding re-introducing [Grant] into the [c]hildren's lives." The order reiterated that the court was not, at that point, going to modify custody. But the order temporarily awarded Grant two hours per week of supervised visitation.

Over a year later, on December 16, 2016, court held a final hearing at which Dr. Shaffer was qualified as an expert witness. Dr. Shaffer testified, among other things, that he had no concerns about any issues that would prevent Grant from having a full relationship with his children; that the children were connected and emotionally bonded to Grant; that he believed Grant could adequately meet the needs of the children; that Grant's abduction of the children was based on a genuine protective instinct and concern about the children's welfare; and that Grant understood what he did was wrong and was not inclined to commit such an act again, and would instead avail himself of other resources to protect the children. Dr. Shaffer also testified not only that there was no reason to restrict the children from supervised visitation with the father, but that unsupervised visitation would actually be healthier for the children. Dr. Shaffer further opined that, in assessing the family as a whole, it would be appropriate for Grant and Weiss to share joint legal custody.

4

On December 27, 2017, the trial court entered a final order modifying the South Carolina custody order. The trial court found that a change in custody was in the best interests of the children, ordering that Weiss and Grant have joint legal custody of the children, awarding Weiss primary physical custody, and awarding Grant visitation rights. Weiss filed a motion for new trial, which the trial court denied. Weiss appeals.

1. *Jurisdiction.*

Weiss contends that the trial court lacked jurisdiction to modify the South Carolina custody order. Because the parties and their children no longer resided in South Carolina and jurisdiction was otherwise proper in the trial court, the argument is without merit.

> OCGA § 19-9-63, which is part of the UCCJEA, provides in pertinent part that
>
> a court of this state may not modify a child custody determination made by a court in another state unless a court of this state has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection (a) of Code Section 19-9-61 and: (1) The court of the other state determines it no longer has exclusive continuing jurisdiction under Code Section 19-9-62 or that a court of this state would be a more convenient forum under Code Section 19-9-67; *or (2) A court of this state . . . determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.*

(Emphasis supplied.)

With regard to the first provision set forth above – that in order to modify the custody ruling of a foreign court, a Georgia court must have jurisdiction to make an initial custody determination under OCGA § 19-9-61 –

> [t]his provision makes it clear that . . . the requirements of [either] paragraphs (1) or (2) of OCGA § 19-9-61 (a) must be satisfied by showing[, in pertinent part]: *(1) This state is the home state of the child on the date of the commencement of the proceeding, . . .* [or] (2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that [Georgia] is the more appropriate forum [and certain other factors are met].

*Jackson v. Sanomi*, 292 Ga. 888, 889-890 (742 SE2d 717) (2013) (citation and punctuation omitted).

In the instant case, the trial court expressly found in its 2017 final order that Grant had lived in Georgia since 2012 and that "[a]t the time this action was filed, [Weiss] and the [c]hildren were residents of Paulding County Georgia, and Georgia was the home state of the [c]hildren." The trial court further found in its final order that "at the time this lawsuit was filed and up until the time of trial, Georgia was and has remained the home state of the [c]hildren." Likewise, in its order denying Weiss' motion for new trial, the trial court reiterated that it had "previously found on multiple occasions, including in section 4 of the Final Order, that Georgia was and remained

6

the home state of the children at the relevant times prior to and during the course of this litigation, and that none of the children, parents, or persons acting as parents resided any longer in South Carolina."

Nevertheless, Weiss argues on appeal that no determination was ever made that Georgia was the home state of the children at the time the complaint was filed. But as recounted above, the record plainly shows that the trial court expressly made that precise determination multiple times. Weiss has pointed to no evidence contradicting that determination; on the contrary, she admits in her appellate brief that she and the children were living in Georgia at the time this action was filed. Accordingly, given the findings that the children and parents no longer resided in South Carolina and that Georgia was the home state of the children at the time the action was filed, the trial court "properly assumed jurisdiction pursuant to OCGA § 19-9-63 to try proceedings filed in the Georgia court seeking to modify the [South Carolina] court custody determination." *Lopez v. Olson*, 314 Ga. App. 533, 538 (2) (724 SE2d 837) (2012).

2. *Joint legal custody.*

Weiss enumerates that the trial court erred in awarding the parties joint legal custody. Her arguments in support of this enumeration are without merit.

(a) *No authority to reconsider joint legal custody claim.*

7

Weiss contends that the trial court dismissed Grant's claim for joint legal custody during the hearing on July 1, 2015, and therefore it had no authority to reconsider that claim in its final order. But contrary to this contention, the trial court did not dismiss the claim for joint legal custody at the hearing.

Near the end of the hearing, the judge announced, "I don't plan on changing the issue of joint legal custody *at this particular point in time*." (Emphasis supplied.) After counsel for Weiss asked the judge if he was granting her motion for a directed verdict on the joint legal custody claim, the trial court did not rule on the motion, and instead stated, "Well, I'm going to dismiss that part of the complaint. I'm going to deny that part of his complaint dealing with the change of custody[.]" Upon inquiry by counsel for Grant, the judge expressly indicated that the denial of the claim for change of custody was merely a temporary ruling at that point. The judge later confirmed that the custody ruling was temporary, explaining to Grant's counsel: "I'm just *denying* your request [for joint legal custody] *for now*. I guess if something is different some other time, I'll consider it. *But right now*, I'm not changing any custody." (Emphasis supplied.) Thereafter, the trial court entered its written temporary order appointing Dr. Shaffer, expressly denying Weiss' motion for a directed verdict, and reiterating that "*at this point it does not appear* that [the court]

8

will grant Plaintiff's request for joint legal custody." (Emphasis supplied.) Nowhere in the order did the trial court dismiss the change of custody claim.

Thus, it is clear from a review of the entire hearing transcript and the written temporary order that the trial court never intended to and did not dismiss the claim for joint legal custody. In discussing that claim at the hearing, "the trial court's [initial] use of [the word "dismiss"] instead of ["deny"] was a misstatement, or palpable 'slip[] of the tongue' [which the court immediately corrected]." *Smallwood v. State*, 296 Ga. 16, 20 (3) (673 SE2d 537) (2009) (citations and punctuation omitted). As explained at the hearing and in the written order, the court merely denied the claim temporarily, but left the matter open for further consideration after the evaluations and recommendations by Dr. Shaffer. Accordingly, Weiss' enumeration of error, premised on the inaccurate factual assertion that the court had dismissed the change of custody claim, is without merit.

(b) *Scrivener's error.*

Weiss complains that the language in the temporary order denying her motion for a directed verdict was a scrivener's error because it did not comport with the trial court's intention, as revealed by a review of the hearing transcript, to dismiss Grant's claim for joint legal custody. However, as discussed above, a review of the hearing

9

transcript does not reveal that the court intended to dismiss the claim, and instead plainly reveals that the court intended only to deny that claim temporarily. Thus, there was no discrepancy between the trial judge's oral pronouncement at the hearing and the court's written temporary order. Moreover, even if there had been a discrepancy,

> an oral pronouncement by a trial court during a hearing is not a judgment until it is reduced to writing and entered as a judgment. An oral pronouncement explaining how the court intends to rule is not binding. It may provide insight on the intent of a later written judgment, but any discrepancy between the written judgment and oral pronouncement is resolved in favor of the written judgment.

*Noble v. Noble*, ___ Ga. App. ___ (1) (Case No A18A0617, decided May 18, 2018) (citation and punctuation omitted). Accordingly, Weiss has shown no error.

(c) *Abuse of discretion.*

Weiss contends that the trial court abused its discretion in modifying the South Carolina child custody order. We disagree.

> A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. The evidence sufficient to warrant a modification of custody can consist of a change in material conditions which have a positive effect on the child's welfare[.]

10

*Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012) (citations and punctuation omitted). "The circumstances warranting a change in custody are not confined to those of the custodial parent: any new and material change in circumstances that affects the child must also be considered." *Neal v. Hibbard*, 296 Ga. 882, 884 (1) (770 SE2d 600) (2015) (citation omitted). Factors the court may consider in determining the best interests of the child include the bonding and emotional ties existing between each parent and child, and any recommendation by a court-appointed custody evaluator. See OCGA § 19-9-3 (a) (3) (A), (O). "A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. Where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion." *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013) (citations omitted).

Here, the trial court made extensive findings of fact in its final order, relying heavily on Dr. Shaffer's testimony and recommendations, and finding that there were material changes in circumstances since the entry of the South Carolina custody order, which was premised on Grant's unlawful taking of the children. Among other things, the court found that Grant had successfully completed his sentence for the

interference with custody charge in South Carolina, that it does not appear likely he would take the children again in violation of court orders, that he has cooperated with Dr. Shaffer's treatment and recommendations, that he has reestablished a good relationship with the children, and that reintroducing Grant into the children's lives has moved forward positively. Based on its finding of material changes in circumstances, the court concluded that a modification of custody was warranted and that a close and continuing relationship with each parent is in the best interests of the children.

> Whether there are changed conditions affecting the welfare of the child[ren] occurring after the rendition of a former final custody judgment which will warrant changing custody is essentially a fact question in each individual case. And if there is reasonable evidence in the record to support the decision made by the [trial] court in changing or refusing to change custody or visitation rights, then the decision of that court must prevail.

*Dearman v. Rhoden*, 235 Ga. 457, 459 (4) (219 SE2d 704) (1975) (citations and punctuation omitted). Because the trial court's "determination was supported by some evidence, [including the expert testimony of Dr. Shaffer,] we cannot say that the trial court abused its discretion when it made [the] modification of custody." *Bankston v. Warbington*, 332 Ga. App. 29, 34 (1) (771 SE2d 726) (2015) (citations omitted).

3. *Visitation award.*

12

Weiss claims that the visitation awarded to Grant by the trial court, which gradually increased the amount of supervised and then unsupervised visitation over the course of one year, constituted an impermissible self-executing change in custody. However, because the award does not entail an improper delegation of judicial authority, does not contain provisions that execute at an uncertain date well into the future, and based the gradual increase in visitation on the children's best interests, we find no error.

In its final order, the trial court found that in the best interests of the children, Grant was entitled to resume regular visitation with the children, but that a gradual increasing of those rights was appropriate. The court then set out a detailed visitation schedule providing for two hours of supervised visitation every weekend in January 2017; four hours of supervised visitation every weekend in February 2017; eight hours of supervised visitation every other weekend in March and April 2017; twelve hours of unsupervised visitation at Grant's house every other weekend in May and June 2017, but supervision of any time not spent at the home, including the drive to and from the mother's home; twelve hours of unsupervised visitation every other weekend in July and August 2017; twenty-four hours of unsupervised visitation every other weekend in September and October 2017; and thirty-six hours of unsupervised

visitation every other weekend in November and December 2017. Then, beginning

in January 2018 and proceeding thereafter, the order provided for a more traditional

visitation schedule, including visitation every other weekend, and specified school

holiday and summer break visitations.

> Visitation privileges are, of course, part of custody. Self-executing change of custody provisions allow for an automatic change in custody based on a future event without any additional judicial scrutiny. Our Supreme Court has held that any self-executing change of custody provision that fails to give paramount import to the child's best interests in a change of custody as between parents must be stricken as violative of Georgia public policy. But not all self-executing provisions are invalid. Rather, we must closely examine the nature of any such provision in determining whether it fails to give paramount import to the child's best interests. . . .
> A review of the case law regarding prohibited self-executing provisions shows that they can generally be summarized as having one of two critical flaws. First, self-executing provisions that rely on a third-party's future exercise of discretion essentially delegate the trial court's judgment to that third party. And, second, self-executing provisions that execute at some uncertain date well into the future are not permitted because the trial court creating those provisions cannot know at the time of their creation what disposition at that future date would serve the best interests of the child; the passage of time and thus, likelihood of changed circumstances is just too great.

*Hardin v. Hardin*, 338 Ga. App. 541, 543-544 (1) (790 SE2d 546) (2016) (citations

and punctuation omitted).

14

In this case, the visitation plan "at issue is a self-executing change of visitation since it allows for an automatic change in [Grant's] visitation with his child[ren], from supervised to unsupervised [and for increasing lengths of time], based on [certain dates] without any additional judicial scrutiny." *Johnson v. Johnson*, 290 Ga. 359, 360 (721 SE2d 92) (2012) (citation omitted). However, this self-executing visitation plan does not suffer from either of the critical flaws that generally are found in prohibited provisions. See *Hardin*, supra. First, the visitation plan in this case does not improperly delegate the trial court's judgment to a third party by relying on that third-party's future exercise of discretion to make visitation changes. Rather, the trial court exercised its own discretion in determining a specific schedule for Grant's gradually increasing visitation privileges. Compare *Johnson*, supra (visitation provision impermissibly gave therapist the authority to determine how and when to phase out supervised visitation); *Hardin*, supra at 545 (1) (provision improperly delegated authority to determine custody changes to a counselor); *Ezunu v. Moultrie*, 334 Ga. App. 270, 273 (2) (779 SE2d 44) (2015) (provision stricken where it allowed children's therapist to decide if and when modifications of visitation were warranted). Second, the provision for Grant's increasing visitation privileges did not execute at some uncertain date well into the future; instead, the detailed visitation plan set forth

15

specific dates for each change to occur within the year following the final order. Compare *Dellinger v. Dellinger*, 278 Ga. 732, 735 (1) (609 SE2d 331) (2004) (self-executing change in visitation provision lacked any expiration date and could take effect at any time, even years in the future). See *Lester v. Boles*, 335 Ga. App. 891, 893 (1) (782 SE2d 53) (2016) (self-executing custody provision set to occur at a readily identifiable time 16 months after entry of order did not suffer the infirmity identified in *Dellinger* because it was not an open-ended provision conditioned upon some future event that could occur at any time).

Moreover, not only does the self-executing visitation plan in this case not suffer from the critical flaws discussed above, but the trial court based the gradually increasing visitation privileges on the best interests of the children. In making its decision, the trial court expressly and repeatedly found, based on the evidence, that a change of custody, including Grant's visitation, was warranted in the best interests of the children; that a close and continuing relationship with both parents was in the best interests of the children; and that in the best interests of the children, Grant was entitled to resume regular visitation and "that a gradual increasing" of such visitation was appropriate. "Because the challenged [visitation] provision in this case gave paramount import to the [children's] best interests, we find no abuse of discretion."

16

*Lester*, supra (punctuation omitted). See also *Durden v. Anderson*, 338 Ga. App. 565, 567 (2) (790 SE2d 818) (2016) (upholding self-executing modification of father's visitation rights upon child reaching age for pre-kindergarten).

4. *Visitation safeguards.*

Contrary to Weiss' claim, the trial court included numerous safeguards in its gradually increasing visitation plan to deter Grant from fleeing with the children. During the months of supervised visitations, the court specified acceptable locations and supervisors, authorized the mother to call the supervisor during the visits, and authorized the use of video calls for the mother to view the children during the visits. During the initial months of unsupervised visitation at Grant's house, the court mandated supervision of the drives to and from the house and of any time not spent at the house, and further provided for the use of a tracking device for Weiss to know Grant's location. Throughout the visitation periods, the court ordered specific contact requirements for Weiss to be informed of the children's location.

Where a court is concerned that a parent might abduct a child, certain "arrangements, including limited and supervised visitation, could be instituted to satisfy the trial court's concerns that [the parent] might abduct the child if granted visitation." *Williams v. Williams*, 301 Ga. 218, 221 (1) (800 SE2d 282) (2017)

17

(citation and punctuation omitted). See also *Chandler v. Chandler*, 261 Ga. 598, 599 (1) (409 SE2d 203) (1991). The trial court instituted such arrangements and safeguards in its visitation order, and Weiss "has shown no abuse of the trial court's discretion here." *Williams*, supra (footnote omitted).

5. *Child support arrearage.*

The trial court ruled in favor of Weiss on her counterclaim for contempt for Grant's nonpayment of previously ordered child support, finding a child support arrearage of $27,270 and ordering Grant to pay $100 per month "until such time as the entire child support arrearage is paid off." On appeal, Weiss first contends that the trial court miscalculated the amount of the arrearage. However, she has failed to support this enumeration of error with citations to any evidence in the record showing that the court miscalculated the arrearage amount. See Court of Appeals Rule 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.") The only evidence concerning the arrearage that is referenced anywhere in her brief is a portion of her own trial testimony that the arrearage totaled $21,900. Under these circumstances, Weiss "has failed to carry [her] burden on appeal of affirmatively proving by the record that the

18

[trial] court erred in finding [the arrearage amount of Grant's] child support payments[.]" *In re Estate of Williams*, 241 Ga. App. 17 (1) (525 SE2d 742) (1999) (citation omitted).

But Weiss further argues that the provision for Grant to repay the child support arrearage at the rate of $100 per month is erroneous because at that rate it would take over 18 years to pay the entire amount. We agree.

> A husband or wife has a variety of remedies available for enforcing and collecting a child support order. The remedies of action for contempt, execution by writ of fi. fa., garnishment, URESA (Uniform Reciprocal Enforcement of Support Act), and an action to set aside fraudulent conveyances are available to the complaining spouse, either singly or concurrently. The complaining spouse is not required to make an election of remedies, and a trial court may not limit the remedies available to collect or enforce a child support order. In addition, a trial court may not order the postponement of payment of the child support until the child reaches the age of 18. Minor children are entitled to support during their minority.

*Strunk v. Strunk*, 294 Ga. 280, 283 (5) (754 SE2d 1) (2013) (citations and punctuation omitted). Here, the trial court's order that Grant must only pay $100 per month improperly limits Weiss' ability to collect the child support due and postpones payment of much of the child support until after the children, who were ten and seven years old at the time of the final order, reach the age of eighteen.

[C]ontrary to the general rule that children are entitled to financial support during their minority, the trial court's order on arrearage payments limits the amount that [Grant] was required to pay while the children were minors living at home and postponed payment of the bulk of the arrearage until the children reached the age of 18. Because the trial court erred in . . . limiting [Weiss'] remedies, and postponing much of the payments until the children were 18, we reverse the portion of its order setting out a payment schedule for the arrearage.

Id. at 284 (5).

*Judgment affirmed in part and reversed in part. Rickman, J., concurs. Ray, J., concurs fully in Divisions 1, 2, 3, and 4 and in judgment only as to Division 5.\**

\* DIVISION 5 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2(a).