**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 24, 2025**

# In the Court of Appeals of Georgia

A25A1938. GRAHAM v. GRAHAM.

HODGES, Judge.

In 2019, Carla and Lisa Graham were divorced in South Carolina pursuant to a final judgment and decree of divorce, under which they shared joint legal and physical custody of their child.[1] In January 2024, Lisa filed a petition in Hall County to domesticate a foreign judgment and modify child support, custody, and visitation of their nine-year-old child, C. J. G. Carla appeals from the January 2025 trial court order granting Lisa sole legal and physical custody of the child, detailing visitation

---

[1] That order was modified in 2022 but still provided for joint legal and physical custody of the child.

provisions, and awarding Lisa child support, numerous expenses, and attorney fees.[2]

Carla does not appeal the actual custody ruling, but she does appeal the order's various child support and visitation provisions. For the following reasons, we reverse a number of aspects related to the order's child support and visitation provisions, we vacate the court's award of OCGA § 9-15-14 (b) attorney fees to Lisa, and we remand the case with direction.

"This Court reviews for an abuse of discretion an order modifying or declining to modify child custody and child support, and evidentiary findings will be affirmed if there is any evidence to support them." (Citation and punctuation omitted.) *Wiggins v. Rogers*, 367 Ga. App. 315 (885 SE2d 823) (2023).

1. Carla first asserts that the trial court erred by requiring her to pay half of C. J. G.'s extracurricular activities without making the necessary factual findings to justify a deviation from the child support guidelines as required by OCGA §§ 19-6-15 (i) (1) (B) and 19-6-15 (i) (2) (J) (ii)[3] and without including a Schedule E attached to

---

[2] Lisa has filed a motion to correct the style of the case, asserting that Carla's appellate brief erroneously lists Lisa as the appellant when, in fact, Carla is the appellant. We grant the motion.

[3] OCGA § 19-6-15 was amended after Lisa filed her motion to modify, and OCGA § 19-6-15 (i) (2) (J) (ii) was recast as OCGA § 19-6-15 (i) (2) (I) (ii) (2024). See

the child support worksheet to support the upward deviation. Lisa acknowledges that a "[s]trict application of OCGA [§] 19-6-15 and prevailing precedent would require the trial court to make findings of fact to support the miscellaneous expenses of child rearing on schedule E of the child support worksheet." She agrees that "[t]he order and worksheet need to be corrected."

Indeed, as our Supreme Court has explained, extracurricular expenses are normally included in the presumptive amount of child support:

> The language of OCGA § 19-6-15 (i) (2) (J) (ii)[, now OCGA § 19-16-15 (i) (2) (I) (ii),] makes clear that a portion of the basic child support obligation is intended to cover average amounts of special expenses for raising children, including the cost of extracurricular activities. If a factfinder determines that the full amount of special expenses described in that division exceeds seven percent of the basic child support obligation, the additional amount of special expenses shall be considered as a deviation to cover the full amount of the special expenses. Such a deviation must then be included in Schedule E of the Child Support Worksheet and, as with other deviations from the presumptive amount of child support, the factfinder must make the required written findings. See OCGA § 19-6-15 (i) (1) (B).

Ga. L. 2024, p. 968, § 1.

(Citation and punctuation omitted.) *Turner v. Turner*, 285 Ga. 866, 867-868 (2) (684 SE2d 596) (2009), disapproved in part on other grounds, *McCarthy v. Ashment-McCarthy*, 295 Ga. 231, 233 (2), n.1 (758 SE2d 306) (2014); see OCGA §§ 19-6-15 (i) (1) (B), (i) (2) (I) (ii).

> Where a deviation is determined to apply and the factfinder deviates from the presumptive amount of child support, the order must explain the reasons for the deviation, provide the amount of child support that would have been required if no deviation had been applied, and state how application of the presumptive amount of child support would be unjust or inappropriate and how the best interest of the children for whom support is being determined will be served by the deviation.

(Citation and punctuation omitted.) *Holloway v. Holloway*, 288 Ga. 147, 149 (1) (702 SE2d 132) (2010).

In ordering Carla to pay half of C. J. G.'s extracurricular expenses in this case, the trial court made no factual findings to support a deviation from the presumptive child support amount and did not include a Schedule E as part of the child support worksheet that was incorporated into its order. As a result, we must reverse this aspect of the child support award and remand this case to the trial court for further proceedings consistent with this opinion.

4

On remand, the trial court should determine whether, under the parameters set forth in OCGA § 19-6-15 (i) (2) [(I)] (ii), a specific deviation from the presumptive amount of child support should be granted based on special expenses incurred for child-rearing, including costs incurred for [C. J. G.'s] extracurricular expenses. If the trial court determines that such a deviation is appropriate, it should support the deviation with the required written findings (OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B)), enter the deviation on Schedule E of the child support worksheet (OCGA § 19-6-15 (b) [(7)]),[4] and incorporate the schedule and worksheet[s] into its order (OCGA § 19-6-15 (m) (1)).

(Citations omitted.) *Wiggins*, 367 Ga. App. at 321 (2) (reversing trial court's requirement that father pay a portion of child's extracurricular activities because court failed to make required findings to support deviation from guidelines or include Schedule E as part of the child support worksheet that was incorporated into its order).

2. Carla next argues that the trial court erred by ordering child support to be paid past the duration of child support allowed by law. According to Lisa, a "clerical

---

[4] As noted in footnote 3, OCGA § 19-6-15 was amended after Lisa filed her motion to modify, and OCGA § 19-6-15 (b) (8) was recast as OCGA § 19-6-15 (b) (7) (2024). See Ga. L. 2024, p. 968, § 1.

error" omitted the word "enrolled," and she acknowledges that the case should be remanded for the trial court to correct this error.

Here, the trial court's order states as follows:

Child support shall continue until such time as the minor child marries, dies, attains the age of majority (or becomes eighteen (18) years of age), or is emancipated, whichever first occurs, provided, however, if the minor child has not completed high school and is unmarried and is not emancipated, child support shall continue until the child graduates from high school, . . . but in no event beyond the date said child attains the age of twenty (20) years.

The language used by the trial court could be read to require Carla to pay child support past the age of majority even if the child is not enrolled in and attending school, and such a requirement "may not, as a matter of law, be imposed[.]" *Sherrard v. Sherrard*, 242 Ga. 611 (250 SE2d 474) (1978); see OCGA § 19-6-15 (e) (requiring that a child be "enrolled in and attending a secondary school" for a post majority child support obligation to continue until the child is 20 years of age). "That part of the decree requiring the payment by the [parent] of support beyond the child's majority is unenforceable and must be stricken." (Citation and punctuation omitted). *Sherrard*, 242 Ga. at 611-612. Accordingly, we must reverse this aspect of the child support

award and remand this issue to the trial court for further proceedings consistent with this opinion.

3. Carla next maintains that the trial court "erred by awarding [Lisa] an impermissible self-executing order for an automatic change of visitation."[5] We agree.

A self-executing change of visitation provision allows for an "automatic" change in visitation based on a future event without additional judicial scrutiny. *Hardin v. Hardin*, 338 Ga. App. 541, 543 (1) (790 SE2d 546) (2016). Our Supreme Court has held that

> self-executing material changes in visitation violate this State's public policy founded on the best interests of a child unless there is evidence before the court that one or both parties have committed to a given course of action that will be implemented at a given time; the court has

---

[5] In the argument section of this enumeration of error, Carla includes a few sentences appearing to assert that the evidence did not support the "limited parenting time" awarded to her by the trial court. However, "an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors." (Citation and punctuation omitted.) *Mims v. State*, 310 Ga. 853, 854, n. 2 (854 SE2d 742) (2021); accord *Steed v. Deal*, 225 Ga. App. 35 (2) (482 SE2d 527) (1997) (declining to consider sufficiency of evidence to support custody modification because the party did not include the issue in her enumeration of errors). This is especially true where, as here, the party failed to raise the issue in the trial court. See *Kuehn v. Key*, 325 Ga. App. 512, 519 (3), n. 24 (754 SE2d 103) (2014). We therefore decline to address any purported sufficiency argument regarding the parenting time awarded to Carla.

heard evidence how that course of action will impact upon the best interests of the child or children involved; and the provision is carefully crafted to address the effects on the offspring of that given course of action.

*Dellinger v. Dellinger*, 278 Ga. 732, 733-734 (1) (609 SE2d 331) (2004). "Such provisions should be the exception, not the rule, and should be narrowly drafted to ensure that they will not impact adversely upon any child's best interests." Id. at 734 (1). We must also bear in mind our Supreme Court's instruction that "[i]t is the trial court's responsibility to determine whether the evidence is such that a modification or suspension of custody/visitation privileges is warranted, and the responsibility for making that decision cannot be delegated to another, no matter the degree of the delegatee's expertise or familiarity with the case." *Wrightson v. Wrightson*, 266 Ga. 493, 496 (3) (467 SE2d 578) (1996).

A review of the case law regarding prohibited self-executing provisions shows that they can generally be summarized as having one of two critical flaws. First, self-executing provisions that rely on a third-party's future exercise of discretion essentially delegate the trial court's judgment to that third party. And, second, self-executing provisions that execute at some uncertain date well into the future are not permitted because the trial court creating those provisions cannot know at the time of their creation what disposition at that future date would serve the best

interests of the child; the passage of time (and thus, likelihood of changed circumstances) is just too great.

(Citations omitted.) *Hardin*, 338 Ga. App. at 544 (1).

Here, the trial court's order states as follows:

No visitation shall occur until Respondent Carla Graham submits to a psychological evaluation and undergoes any recommended counseling. . . . If and when Respondent Carla Graham elects to . . . begin [the] reunification process with the minor, while the child is under the age of eighteen (18) or still in high school Respondent Carla Graham shall undergo therapeutic endeavors with the minor child prior to the commencement of any visitation. Once Respondent Carla Graham has completed the appropriate necessary steps in the therapeutic reunification process, Respondent Carla Graham's twelve (12) hour per month visitation may be increased after consultation with and agreement by Petitioner Lisa Graham.

Carla argues that the court's award of parenting time is impermissibly self-executing because it depends "on events that may or may not happen at some unknown time in the future[,]" requires "amorphous 'appropriate' necessary steps," gives control to a mental health professional to determine "what is appropriate and when whatever treatment required is 'complete'," and "leaves the best interest of the child determination to [a] mental health professional and [Lisa] and not to the trial court."

Although Lisa counters that "[t]he decision of the trial court to leave the increase in visitation for [Carla] in the hands of [Lisa] — one of the parties — distinguishes this case from *Hardin* and places it in the category of permissible self-executing changes in visitation[,]" she fails to cite a single case in support of this assertion. (Emphasis omitted.)

The question for this Court to resolve is whether the self-executing provision challenged here is the sort prohibited under Georgia law. We conclude that it is because the provision suffers from both critical flaws mentioned above: (i) it relies on a third-party's future exercise of discretion, essentially delegating the trial court's judgment to that third party, and (ii) it executes at some uncertain date well into the future and does not assure that the disposition at that future date would serve the best interests of the child.

Turning to the first flaw, the trial court's order essentially delegates the trial court's judgment to third parties. The order leaves to a future counselor numerous decisions about what "therapeutic endeavors" Carla must undergo if she begins a reunification process with the child and what "appropriate necessary steps in the therapeutic reunification process" must be accomplished before visitation may be

increased. In addition, the order leaves the ultimate decision of whether Carla's visitation may be increased to Lisa. "[W]e have instructed trial courts to strike such provisions in those cases in which the trial court has delegated its authority to determine the timing of custody transitions or modifications to a counselor. That is essentially what has happened here." *Hardin*, 338 Ga. App. at 545 (1); see also *Johnson v. Johnson*, 290 Ga. 359, 359-360 (721 SE2d 92) (2012) (reversing trial court judgment with direction that the trial court strike the self-executing provision of the decree that allowed an automatic change in a parent's visitation with his child from supervised to unsupervised "based on a future event — the determination of the therapist — without any additional judicial scrutiny"); *Wrightson*, 266 Ga. at 495-496 (3) (reversing trial court's provision that a therapist could suspend or modify visitation because, while the expert's opinion could serve as evidence supporting the trial court's decision to modify or suspend visitation, the decision must be made by the trial court, not the expert).

More importantly, the self-executing provision in the trial court's order is flawed because it is an open-ended provision conditioned upon the occurrence of

some future event that may never take place, and the trial court cannot know whether the best interests of the child would be served at that future date.

> [T]he automatic change in visitation provision in this case contains no language limiting its application at or near the time of the divorce. In fact, the challenged provision lacks any expiration date at all. As drafted the provision would authorize implementation of the self-executing change of visitation at any time, even though the change could be triggered months or even years in the future. This material change in the [child's] visitation would be accomplished automatically and without any regard to the circumstances existing in the [child's life] at the time of the change. As such, this provision is utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child.

(Citations and punctuation omitted.) *Dellinger*, 278 Ga. at 735 (1); compare *Weaver v. Jones*, 260 Ga. 493, 494 (3) (396 SE2d 890) (1990) (upholding a self-executing custody change provision, that was adopted by the court in a court-approved consent agreement, contemplating that an older child, upon reaching age 14, could choose the parent with whom the child wished to reside because such a provision comported with the right of such a child to select the custodial parent); *Lester v. Boles*, 335 Ga. App. 891, 893 (1) (782 SE2d 53) (2016) (upholding a self-executing provision that altered

custody when the child began first grade, noting that the provision was not invalid because the change in custody was not conditional upon an event that may never take place (it would occur "at a readily identifiable time" — approximately 16 months after entry of the order) and was "not an arbitrary change that may or may not affect the child's best interests at some unknown date").

For these reasons, we find that the self-executing provision in the trial court's order constitutes an abuse of discretion and should be stricken. Accordingly, we reverse this part of the visitation portion of the final judgment and remand the case to the trial court for modification of the visitation provision.

4. Finally, Carla argues that the trial court erred by awarding OCGA § 9-15-14 (b) attorney fees to Lisa. Under OCGA § 9-15-14 (b), a trial court

> may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct. . . . As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

"[W]hen awarding attorney fees under OCGA § 9-15-14 (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct." (Citation and punctuation omitted.) *Moore v. Hullander*, 345 Ga. App. 568, 573 (2) (c) (814 SE2d 423) (2018). We review a trial court's award of attorney fees under OCGA § 9-15-14 (b) "only for an abuse of discretion[.]" Id. at 572 (2) (c).

At the final hearing in this case, Lisa's attorney tendered an affidavit listing roughly $35,000 in attorney fees. In its final judgment, the trial court awarded Lisa $16,535 in OCGA § 9-15-14 (b) attorney fees, specifically finding as follows:

> [T]he Defendant expanded litigation unnecessarily by making allegations regarding sexual abuse which expanded the scope of litigation. In addition, despite indicating that she wanted to "surrender" her parental rights, the Defendant would not engage in good faith negotiations, asked for a continuance days before the final hearing, and insisted on conducting a contested hearing. Additionally, she terminated several attorneys during the course of the litigation which required the Plaintiff's attorney to restart negotiations, information sharing, etc. with multiple attorneys. Finally, the Defendant sent emails and OFW [(Our Family Wizard app)] messages to the Plaintiff and failed to engage in visitation in accordance with the negotiated temporary agreement which expanded the litigation. The costs associated with those delays and bad faith actions began on May 28, 2024 and led up to the date of the final hearing, including the costs of the expanded litigation of the final hearing

14

itself. The Court has excluded all costs that would have been associated with presenting the Petition as originally filed, including discovery requests and responses, mediation, preparing DRFA [(Domestic Relations Financial Affidavit)] and Child Support Worksheets, and all routine tasks, as well as all tasks prior to May 2024.

The court's order not only tracked the statutory language but included specific findings supporting its conclusion. Compare *Moore*, 345 Ga. App. at 573 (2) (c) (reversing OCGA § 9-15-14 (b) attorney award because trial court failed to include findings underlaying its "bare conclusion" that party caused unreasonable delay). In addition, contrary to Carla's argument, the trial court's order shows that it undertook the complex decision-making process involved in reaching its dollar figure, specifically noting that it excluded costs associated with non-sanctionable conduct and awarding only $16,535 of the approximately $35,000 total attorney fees.

That said, although we recognize that a party does not have to prevail to recover OCGA § 9-15-14 (b) attorney fees, see *Betallic, Inc. v. Deavours*, 263 Ga. 796, 796-797 (439 SE2d 643) (1994), given our reversal on a number of different grounds in this case, we vacate the trial court's award of these fees and remand the case for the court to reconsider its award and determine whether any of our grounds for reversal impact

15

its award. See *Trotter v. Summerour*, 273 Ga. App. 263, 267-268 (2) (614 SE2d 887) (2005).

In conclusion, we reverse a number of aspects related to the trial court order's child support and visitation provisions, we vacate the court's award of OCGA § 9-15-14 (b) attorney fees to Lisa, and we remand the case with direction.

*Judgment reversed in part and vacated in part. Case remanded with direction. McFadden, P. J., and Pipkin, J., concur.*